UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DR. KRISTEN BENNETT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:22-CV-0289-B |
| | § | |
| TARRANT COUNTY COLLEGE | § | |
| DISTRICT, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Tarrant County College District (Defendant or TCCD)'s Motion to Dismiss (Doc. 8) Dr. Kristen Bennett (Plaintiff or Dr. Bennett)'s First Amended Complaint. For the following reasons, the Court construes TCCD's motion as one seeking only partial dismissal and **GRANTS** the motion.

## I.

## BACKGROUND[1]

### A.  *Factual Background*

This is an employment case concerning allegations of discrimination and retaliation arising out of Dr. Bennett's employment with TCCD. TCCD is a community college district that operates a system of community colleges in and around Tarrant County. Doc 6, Am. Compl., ¶ 2.2. From October 1, 2020, to January 31, 2022, Dr. Bennett worked for TCCD as its Executive Vice President

---

[1] The Court derives the factual background from Dr. Bennett's First Amended Complaint (Doc. 6).

for Advancement. *Id.* ¶ 4.1. Dr. Bennett's supervisor during this time was the chancellor of TCCD, Dr. Eugene Giovannini (the chancellor or Dr. Giovannini). *Id.* ¶ 3.1.

On July 13, 2021, Dr. Bennett met with a female subordinate of hers to discuss a workplace conflict the subordinate had with a colleague. *Id.* ¶ 4.4. Disputes between the subordinate and other employees continued for four weeks after this initial incident. *Id.* ¶ 4.8. Dr. Bennett alleges she disciplined the subordinate in an effort to correct her behavior. *Id.*

On August 17, 2021, Dr. Giovannini summoned Dr. Bennett to his office to discuss Dr. Bennett's behavior in an earlier meeting. *Id.* ¶ 4.9. At this meeting, Dr. Bennett first noticed that Dr. Giovannini's attitude and demeanor toward her "had . . . changed." *Id.* The two met again on August 31, 2021, at which time Dr. Giovannini informed Dr. Bennett that he was placing her on an Executive Development Plan (EDP), which is the equivalent of a personal improvement plan (PIP). *Id.* ¶ 4.10. The next day, Dr. Giovannini reiterated that Dr. Bennett would be on the EDP until December 31, 2021. *Id.* ¶ 4.13. Additionally, Dr. Bennett was told that her contract was not being renewed, that she could be "let go" at any time, and that she would be required to meet with Dr. Giovannini every two weeks. *Id.*

On October 28, 2021, TCCD's Associate General Counsel informed Dr. Bennett that Dr. Giovannini was having an inappropriate relationship with the female subordinate that Dr. Bennett previously disciplined, but noted that there was "not enough [information] to start an investigation." *Id.* ¶¶ 4.20, 4.23. The Associate General Counsel also said it was her personal opinion that Dr. Bennett should not have been put on the EDP. *Id.* ¶ 4.24.

On November 15, 2021, Dr. Bennett resigned from her position, stating that her last day would be January 31, 2022. *Id.* ¶¶ 4.29–4.30. However, on December 2, 2021, Dr. Bennett rescinded

her resignation and filed an internal grievance against Dr. Giovannini. *Id.* ¶ 4.31. Shortly after her rescission, Dr. Bennett was placed on paid administrative leave and prohibited from entering campus. *Id.* ¶¶ 4.34–4.35. On January 14, 2022, Dr. Bennett made a "written demand for a due process hearing," which TCCD denied. *Id.* ¶ 4.37. Dr. Bennett's employment with TCCD ended on January 31, 2022, though the parties dispute whether she was terminated or TCCD merely accepted Dr. Bennett's resignation. *Id.* ¶¶ 4.1, 4.31–4.37; Doc. 8, Def.'s Mot., 6.

On December 30, 2021, Dr. Bennett submitted complaints of discrimination and retaliation to the Texas Workforce Commission Civil Rights Division (TWC-CRD) and the United States Equal Employment Opportunity Commission (EEOC). Doc. 6, Am. Compl., ¶ 4.39.

B.   *Procedural Background*

This suit was filed February 7, 2022. *Id.* ¶ 3.5. On March 24, 2022, Dr. Bennett received her Notices of Right to Sue and subsequently filed her Amended Complaint within ninety days of receiving notice. Doc. 6, Am. Compl., ¶ 4.41.

Dr. Bennett brings claims against TCCD for: (1) breaches of contract based on (a) her original employment contract's notice and anti-retaliation provisions and (b) her EDP; (2) retaliation in violation of her First Amendment free speech rights pursuant to 42 U.S.C. § 1983; (3) violation of her Fourteenth Amendment procedural due process rights pursuant to § 1983; (4) violations of Title VII, Title IX, and the Age Discrimination in Employment Act (ADEA)[2]; (5) violation of the Texas Equal Rights Amendment (TERA); and (6) violation of her substantive

---

[2] Though her pleading is somewhat vague, the Court construes Dr. Bennett's Amended Complaint as alleging both discrimination and retaliation claims under Title VII, Title IX, and the ADEA. *See* Doc. 6, Am. Compl., ¶¶ 4.39, 5.5, 5.15.

due process rights. Doc. 6, Am. Compl., ¶¶ 5.1–5.17. TCCD filed the instant motion to partially dismiss Dr. Bennett's claims. Doc. 8, Def.'s Mot. Dismiss. Specifically, TCCD seeks dismissal of Dr. Bennett's claims for: sex discrimination under Title VII and the TERA; age discrimination under the ADEA; retaliation under the First Amendment; breach of contract premised on her original contract's notice provision; breach of contract premised on the EDP; and violations of her procedural and substantive due process rights.[3] *Id.* Dr. Bennett has responded to the Motion, *see* Doc. 13, Pl.'s Resp., and TCCD's time to file a reply has expired. *See* N.D. Tex. Loc. R. 7.1(f) (providing 14 days to file a reply brief). Accordingly, the Motion is ripe for review and the Court considers it below.

## II.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). But the court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

---

[3] Although TCCD's motion asks the Court to "dismiss Plaintiff's lawsuit with prejudice," Doc. 8, Def.'s Mot. Dismiss., 11, the Court notes that TCCD's motion does not address Dr. Bennett's breach-of-contract claim for TCCD violating its own anti-retaliation policy under her original contract, her Title VII or ADEA retaliation claims, or her Title IX claims. *See* Doc. 8, Def.'s Mot. Dismiss. As such, the Court declines to engage in a sua sponte analysis of these claims and instead construes TCCD's motion as one for partial dismissal.

To survive a motion to dismiss, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). When well-pleaded facts fail to meet this standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (quotation marks and alterations omitted).

The Court's review is limited to a plaintiff's allegations in the complaint and to those documents attached to a defendant's motion to dismiss to the extent that those documents are referred to in the complaint and are central to the plaintiff's claims. *Causey v. Sewell Cadillac–Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

## III.

## ANALYSIS

The Court begins by addressing Dr. Bennett's discrimination claims based on violations of Title VII, the TERA, and the ADEA. The Court then examines her First Amendment retaliation claim. Next, the Court addresses her breach-of-contract claims. Finally, the Court analyzes Dr. Bennett's procedural and substantive due process claims.

A.    *Discrimination Claims*

    The Court first considers Dr. Bennett's sex discrimination claims under Title VII and the

TERA before turning to her age discrimination claim under the ADEA.

    1.    Sex Discrimination

        i.    *Title VII*

    Title VII makes it unlawful for employers to "discriminate against any individual with respect

to [her] compensation, terms, conditions, or privileges of employment, because of such individual's

. . . sex." 42 U.S.C. § 2000e-2(a)(1). Under the *McDonnell Douglas* burden-shifting framework

employed in such cases, a plaintiff must first establish a prima facie case of discrimination by showing

that she:

> (1) is a member of a protected group; (2) was qualified for the position at issue;
> (3) was discharged or suffered some adverse employment action by the employer; and
> (4) was replaced by someone outside his protected group or was treated less favorably
> than other similarly situated employees outside the protected group.

*McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).[4] The parties do not dispute the first

two prongs.

    An adverse employment action supporting a Title VII discrimination claim includes, "only

'ultimate employment decisions'—such as hiring, granting leave, discharging, promoting, or

compensating." *Moini v. Univ. of Tex.*, 832 F. Supp. 2d 710, 717 (W.D. Tex. 2011) (citing *McCoy*

492 F.3d at 560)); *Turner v. Novartis Pharms. Corp.*, 442 F. App'x 139, 141 (5th Cir. 2011).

Additionally, to satisfy the "similarly situated" prong, the employee must establish that she was

"treated less favorably than a similarly situated employee outside of her protected class in nearly

---

[4] Title VII plaintiffs are also required to exhaust their administrative remedies before seeking judicial
relief. *See* 42 U.S.C. § 2000e-5(e)(1). The parties do not appear to dispute that Dr. Bennett satisfied the
exhaustion requirement. *See* Doc. 6, Am. Compl., ¶¶ 4.39–4.41; Doc. 8, Def.'s Mot. Dismiss.

identical circumstances." *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 998 (5th Cir. 2022); *see also Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). Factors such as "job responsibility, experience, and qualifications," are taken into consideration to determine whether an employee is similarly situated. *Id.* (citation omitted).

In her Amended Complaint, Dr. Bennett contends that she was punished without cause while Dr. Giovannini was given "preferential treatment" and that Dr. Giovannini created a hostile work environment[5] by punishing Dr. Bennett for speech that he "did not find offensive in males, thereby imposing gender stereotyping upon plaintiff."[6] Doc. 6, Am. Compl., ¶¶ 5.5(2), 5.5(10). TCCD argues that Dr. Bennett's statements are conclusory and not sufficient to state a sex-discrimination claim. Doc. 8, Def.'s Mot. Dismiss, 9. The Court finds that Dr. Bennett has failed to sufficiently plead facts supporting her Title VII sex discrimination claim.

First, Dr. Bennett has not alleged an adverse employment action. The Fifth Circuit has held that placing an "employee on a performance improvement plan," such as Dr. Bennett's EDP, "is not an adverse employment action." *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 824 (5th Cir. 2019) (citing *Turner*, 442 F. App'x at 141). Similarly, placement on administrative leave is not an

---

[5] Although Dr. Bennett uses the phrase "hostile work environment" in her Amended Complaint, the Court understands this reference as simply referring to Dr. Giovannini's allege disparate treatment of Dr. Bennett—not bringing a separate Title VII hostile work environment claim. *See* Doc. 6, Am. Compl., ¶ 5.5(1). *See generally Taylor v. Tex. S. Univ.*, 569 F. App'x 193, 194 (5th Cir. 2014).

[6] "An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). Thus, this court analyzes Dr. Bennett's claims pertaining to TCCD and Dr. Giovannini.

ultimate employment decision; thus, Dr. Bennett's paid leave does not qualify as an adverse employment action. *Moini,* 832 F. Supp. 2d at 717; *McCoy,* 492 F.3d at 559–60.

Second, even assuming Dr. Bennett could satisfy the first three requirements of a prima facie discrimination case, she has not sufficiently pleaded that she was treated differently than similarly situated males. *See Brown v. Bd. of Trs. Sealy Indep. Sch. Dist.,* 871 F. Supp. 2d 581, 592 (S.D. Tex. 2012) ("[F]or employees to be similarly situated[,] those employees' circumstances, including their misconduct, must have been 'nearly identical.'" (citing *Perez v. Tex. Dep't of Crim. Just.,* 395 F.3d 206, 210 (5th Cir. 2004))); *Lee,* 574 F.3d at 260 ("The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories."). Dr. Bennett's Amended Complaint lacks any factual material supporting an inference that she was treated differently than a similarly situated male. *See* Doc. 6, Am. Compl. So, TCCD's Motion to Dismiss Dr. Bennett's Title VII sex discrimination claims is **GRANTED**.

> ii.    *TERA*

The Texas Constitution states, "[e]quality under the law shall not be denied or abridged because of sex, race, color, creed, or national origin." Tex. Const. art. 1, § 3a. "The words 'under the law' require that the discrimination complained of be state action or private conduct that is encouraged by, enabled by, or closely interrelated in function with state action." *Verandah Salon, Inc. v. Crow-Brighton No. 18, Ltd.,* 2003 WL 22838717, at *1–2 (N.D. Tex. Oct. 28, 2003).

The Texas Supreme Court prescribes a three-step evaluation to determine whether the Amendment has been violated. *Bell v. Low Income Women of Tex.,* 95 S.W.3d 253, 257 (Tex. 2002)

(citing *In re McLean*, 725 S.W.2d 696, 697 (Tex. 1987)). First, courts consider "whether equality under the law has been denied." *Id.* Second, if it has, courts decide "whether equality was denied *because* of a person's membership in a protected class." *Id.* Finally, if the first two questions are answered in the affirmative, courts examine whether "the challenged action . . . is narrowly tailored to serve a compelling governmental interest." *Id.* Under Texas law, however, there is no remedial statute, meaning plaintiffs can only seek equitable relief for violations of the TERA. *See Reynolds v. City of Commerce*, 853 F. App'x 978, 980 (5th Cir. 2021) (per curiam).

The legal standard for the first part of the analysis is "the same as the legal standard for the analysis under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution." *Gatesco Q.M. Ltd. v. City of Hous.*, 503 S.W.3d 607, 621 (Tex. App.—Houston [14th Dist.] 2016, no pet.). The elements of an equal protection claim based on a party's membership in a protected class are that the challenged act (1) "had a disproportionate impact on a protected class" and (2) "had a discriminatory intent or purpose." *Rivera v. Sonnenschein*, 2022 WL 1751685, at *5 (Tex. App.—Austin June 1, 2022, pet. filed) (citing *Richards v. League of United Latin Am. Citizens (LULAC)*, 868 S.W.2d 306, 312 (Tex. 1993); *Su Inn Ho v. Univ. of Tex. at Arlington*, 984 S.W.2d 672, 685 (Tex. App.—Amarillo 1998, pet. denied) ("Proof of discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."). Moreover, the plaintiff must establish that she was "treated differently from others similarly situated." *Gatesco*, 503 S.W.3d at 621 (citing *Klumb v. Hous. Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 13 (Tex. 2015)).

Dr. Bennett alleges that she is part of a protected class but fails to assert facts supporting that her discipline was imposed with discriminatory intent or that she was treated differently from

similarly situated employees. *See* Doc. 6, Am. Compl., ¶ 5.16. Dr. Bennett claims that TCCD "supported [Dr.] Giovannini, a male, in disciplining his subordinate, Dr. Bennett, even though the discipline was unwarranted. Yet Dr. Bennett's efforts to discipline her subordinate were thwarted and resulted in retaliation . . . ." *Id.* (parentheticals omitted). However, she only makes a conclusory allegation as to why she was put on leave and Dr. Giovannini was not. *Id.* There is no description or mention of discriminatory intent on the part of TCCD. Thus, her claim fails to plead intent.

Further, even if the Court assumes TCCD performed these acts with discriminatory intent, Dr. Bennett has failed to allege facts showing that she and Dr. Giovannini were similarly situated. Although both roles had subordinates that could be disciplined, this does not mean Dr. Bennett and Dr. Giovannini were similarly situated. For example, each of their job duties differ, as evidenced by the EDP's description of Dr. Bennett's duties and the fact that she reported directly to Dr. Giovannini. *See Lee*, 574 F.3d at 260 ("The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities." (citing *Wallace v. Methodist Hosp. Sys.,* 271 F.3d 212, 221–22 (5th Cir. 2001))); *see also Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 856 (S.D. Tex. 2010) ("[T]he Fifth Circuit defines similarly situated narrowly."); Doc. 6, Am. Compl., ¶¶ 4.9–4.10; Doc. 8-4, EDP, 3. Because Dr. Bennett has failed to meet her pleading burden, TCCD's Motion to Dismiss the TERA claim is **GRANTED**.

### 2.    Age Discrimination

The ADEA makes it unlawful for an employer to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To establish a claim of age

discrimination under the ADEA, the plaintiff must establish that she "(1) was within a protected class; (2) was qualified for the position; (3) suffered an adverse employment decision; and (4) was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of h[er] age." *Keller v. Coastal Bend Coll.*, 629 F. App'x 596, 600 (5th Cir. 2015) (citing *Jackson v. Cal–W. Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010)).

Dr. Bennett alleges that she is part of the protected class (over forty years of age) and was discriminated against on the basis of her age. Doc. 6, Am. Compl., ¶ 5.15. She further states that she is "older than the female subordinate whom she was punished for attempting to discipline." *Id.* However, Dr. Bennett fails to sufficiently allege that she suffered an adverse employment action and that she was either replaced or discharged because of her age. Instead, she simply states that she was over forty years old. Because, Dr. Bennett has failed to plead facts supporting her age discrimination claim, TCCD's Motion to Dismiss this claim is **GRANTED**.

B.    *First Amendment Retaliation Claim*

Dr. Bennett claims that TCCD violated her First Amendment rights by retaliating against her for exercising her free speech rights and that TCCD is therefore liable to her under 42 U.S.C. § 1983. Section 1983 prohibits government officials, acting under color of state law, from depriving individuals of rights guaranteed under the Constitution or laws of the United States. *Saenz v. Dall. Cnty. Cmty. Coll. Dist.*, 2011 WL 1935742, at *3 (N. D. Tex. May 16, 2011). For a governmental entity such as TCCD to be held liable under § 1983, there must be (1) "a policymaker"; (2) "an official policy"; and (3) "a violation of a constitutional right whose 'moving force' is the policy." *Id.* (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Assuming without deciding that

Dr. Bennett could satisfy the first two elements of *Monell* liability, the Court finds that Dr. Bennett has failed to establish the third prong—a violation of her constitutional rights.

To prevail on a First Amendment retaliation claim against a government employer, the plaintiff must show: (1) "[s]he suffered an adverse employment decision," (2) "[s]he spoke as a citizen on a matter of public concern," (3) "[her] interest in the speech outweighs the government's interest in the efficient provision of public services," and (4) "the protected speech motivated the adverse employment action." *Bevill v. Fletcher*, 26 F.4th 270, 276 (5th Cir. 2022) (citation omitted).

Dr. Bennett contends TCCD retaliated against her for filing a grievance against Dr. Giovannini. Doc. 6, Am. Compl., ¶ 5.7. She alleges six retaliatory actions taken by TCCD: (1) non-renewal of her employment contract, (2) placement on the EDP, (3) constructive termination through her resignation, (4) placement on involuntary paid leave,[7] (5) rejection of her withdrawn resignation, and (6) her final termination. Doc. 13, Pl.'s Resp., 6 (citing Doc. 6, Am. Compl., ¶¶ 4.10–4.13, 4.24–4.25, 4.29, 4.31, 4.34–4.35, 4.37–38).

As an initial matter, Dr. Bennett's placement on an improvement plan, the non-renewal of her original employment contract, and her resignation all occurred before she filed her December 2, 2022 grievance against Dr. Giovannini. *Id.* ¶¶ 4.10, 4.13, 4.29. Thus, these acts could not have been in retaliation for Dr. Bennett's subsequent filing of a grievance. *See Garza v. Escobar*, 972 F.3d 721, 728–29 (5th Cir. 2020) (adverse action must have been "because of" speech). Regardless, all of Dr. Bennett's First Amendment retaliation claims fail because Dr. Bennett's grievance was not "a matter of public concern." *See Connick v. Meyers*, 461 U.S. 138, 146–48 (1983).

---

[7] In the Amended Complaint, Dr. Bennett seems to draw a distinction between her administrative leave and being barred from entering campus, Doc. 6, Am. Compl. ¶¶ 4.35, 5.9, but in her Response, she notes that they are related. Doc. 13, Pl.'s Resp., 6. The Court construes Dr. Bennett's bar from campus as being a consequence of her involuntary leave. *See* Doc. 6, Am. Compl., ¶ 5.5(6).

"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement" and should relate to a "matter of political, social, or other concern to the community." *Id.* "When a public employee speaks in [her] capacity as an employee and addresses personal matters such as personnel and employment disputes, rather than in [her] capacity as a citizen on a matter of public interest, [her] speech falls outside the protection of the First Amendment." *Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 186 (5th Cir. 2005). To determine whether her speech was of public concern, the Court must look to the "concern to the community" and whether Dr. Bennett was acting in the "capacity" of an employee when she filed her complaint. *Connick*, 461 U.S. at 146; *see also Bradshaw v. Pittsburg Indep. Sch. Dist.*, 207 F.3d 814, 818 (5th Cir. 2000).

The Court finds that Dr. Bennett has failed to plead facts showing that her filed grievance was a matter of public concern. The specific content of Dr. Bennett's grievance is not before the Court. Dr. Bennett does, however, claim that she filed the grievance to "stand up to the oppression and injustice that [Dr.] Giovannini was perpetuating upon her." Doc. 6, Am. Compl., ¶ 4.31. There are no facts alleged to show the grievance concerned the community, just a conclusory statement that "her grievance contained comments of public importance." *Id.* ¶ 5.7. Although Dr. Bennett claims she filed the grievance against Dr. Giovannini "not [during] the course of performing her duties as an employee," she has failed to show that the grievance was spurred by more than mere personal concern regarding specific employment actions taken against her. *Id.* Without more, the retaliation claims based on the rejection of her withdrawn resignation and her placement on

administrative leave cannot go forward. TCCD's Motion to Dismiss Dr. Bennett's First Amendment retaliation claim is **GRANTED**.

## C.  *Breach-of-Contract Claims*

Under Texas law, a plaintiff seeking to recover on a breach-of-contract claim must show "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (quoting *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)).

Dr. Bennett contends TCCD breached two separate contracts: (1) the original written employment contract that expired on August 31, 2021, and (2) the EDP Dr. Bennett was placed on starting September 1, 2021. Doc. 6, Am. Compl., ¶ 5.1. As noted above, the Court can review documents attached to a defendant's motion to dismiss to the extent that those documents are referred to in the complaint and are central to the plaintiff's claims. *Causey*, 394 F.3d at 288. Here, the Court analyzes Dr. Bennett's breach-of-contract claims by reference to her original contract and the EDP, both attached to TCCD's Motion to Dismiss, since both were referenced in Dr. Bennett's complaint and are central to her claims. *See* Doc. 6, Am. Compl., ¶¶ 5.1–5.5.

### 1.  Original Contract

Dr. Bennett claims TCCD breached her original contract by violating its own policy requiring written notice, since she never received a "written notice of her non-renewal." Doc. 6, Am. Compl., ¶¶ 5.2–5.3, 5.5(3), 5.5(8)–(9). TCCD responds by pointing out that the policy only requires written notice "if the decision is made to dismiss the employee." Doc. 8, Def.'s Mot., 4 (quoting Doc. 8-4, EDP, 3). Dr. Bennett's pleadings confirm that she was not dismissed and continued to work for

TCCD after her original contract was not renewed. Doc. 6, Am. Compl., ¶¶ 4.10–4.13; Doc. 8, Def.'s Mot., 4. Thus, written notice was not required. TCCD's Motion to Dismiss is **GRANTED** regarding the written notice of non-renewal of the original contract.

       2.      <u>EDP Improvement Plan</u>

Dr. Bennett claims that her EDP constituted a second contract dependent on providing satisfactory work. Doc. 6, Am. Compl., ¶¶ 5.1, 5.4. Dr. Bennett alleges that TCCD breached the EDP by constructively terminating her, placing her on paid leave, and preventing her from entering campus. *Id.* ¶ 5.4 TCCD responds that: Dr. Bennett was an at-will employee after her original contract expired; the EDP did not modify Dr. Bennett's at-will status; and, therefore, Dr. Bennett's breach-of-contract claim based on the EDP must fail. Doc. 8, Def.'s Mot., 3.

Texas presumes employment is at-will. *Thomas v. Long*, 207 S.W.3d 334, 341 (Tex. 2006). So, "absent a specific agreement to the contrary, employment may be terminated by the employer or the employee at will, for good cause, bad cause, or no cause at all." *Montgomery Cnty. Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998). "To rebut the presumption of employment at will, an employment contract must directly limit in a 'meaningful and special way' the employer's right to terminate the employee without cause." *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 478 (5th Cir. 2000) (per curiam) (quoting *Rios v. Tex. Com. Bancshares, Inc.*, 930 S.W.2d 809, 815 (Tex. App.—Corpus Christi 1996, writ denied)). The employee has the burden of proving the at-will relationship was modified. *Dworschak v. Transocean Offshore Deepwater Drilling, Inc.*, 352 S.W.3d 191, 196 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

To modify an employee's at-will status, the modification must be "(1) expressed rather than implied, and (2) clear and specific." *Miksch v. Exxon Corp.*, 979 S.W.2d 700, 703 (Tex. App.—Houston [14th Dist.] 1998, pet. denied); *Cote v. Rivera*, 894 S.W.2d 536, 540 (Tex. App.—Austin 1995, no writ) (citations omitted). Courts "must distinguish between carefully developed employer representations upon which an employee may justifiably rely, and general platitudes, vague assurances, praise, and indefinite promises of permanent continued employment." *Montgomery Cnty.*, 965 S.W.2d at 503. General comments that an employee's satisfactory work will prevent termination are not enough to show intent to bind the employer. *Id.* at 502. However, an employer's manual or handbook containing detailed procedures for discharge and that expressly recognizes an obligation to discharge only for good cause may create a contract modifying the at-will rule. *Aiello v. United Air Lines, Inc.*, 818 F.2d 1196, 1198–99 (5th Cir. 1987). Additionally, "Texas law recognizes that the at-will status of an employment agreement may be changed in some instances when the employer and employee enter into a 'satisfaction contract' which provides for employment so long as the employee's performance is satisfactory." *Allamon v. Acuity Specialty Prods.*, 877 F. Supp. 2d. 498, 507 (E.D. Tex. 2012) (citing *Belian v. Tex. A & M Univ. Corpus Christi*, 987 F. Supp. 517, 520 (S.D. Tex. 1997), *aff'd*, 132 F.3d 1453 (5th Cir. 1997); *Zep Mfg. Co. v. Harthcock*, 824 S.W.2d 654, 659 (Tex. App.—Dallas 1992, no writ)).

In the present case, the Court finds that the EDP did not modify Dr. Bennett's at-will status because it was not "clear" or "specific" about whether Dr. Bennett's ability to be terminated was altered. *See Miksch*, 979 S.W.2d at 703. The agreement indicated that she was not under an employment contract, but that "a new contract w[ould] be issued pending [her] satisfactory mastery of the expectations detailed [t]herein." Doc. 8-4, EDP, 1. Additionally, the EDP stated that

Dr. Bennett could be terminated before the end date of December 31, 2021. *Id.* There is no explicit indication in the agreement that her at-will employment status was altered by being placed on an improvement plan. *Id.* at 1–3. Dr. Bennett does cite any caselaw suggesting the contrary. *See* Doc. 13, Pl.'s Resp., 12–13.

Because Dr. Bennett has failed to plead facts showing that the EDP modified her at-will employment, her breach-of-contract claim based on the EDP necessarily fails. Accordingly, the Court **GRANTS** TCCD's Motion to Dismiss this claim.

D.     *Due Process Claims*

    1.     Procedural Due Process Claims

To prevail on a procedural due process claim "a plaintiff must first identify a protected life, liberty, or property interest and then prove that governmental action resulted in a deprivation of that interest." *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001). "Procedural due process entitles a public employee with a property right in [her] employment to notice of the charges against the employee, an explanation of the employer's evidence, and an opportunity to present [her] side of the story." *Fowler v. Smith*, 68 F.3d 124, 127 (5th Cir. 1995).

Dr. Bennett claims that TCCD's refusal to provide her a due process hearing violated (1) her liberty interest in free speech and (2) her property interest in her contractual right to employment, rendering TCCD liable to her under 42 U.S.C. § 1983.[8] Doc. 6, Am. Compl., ¶¶ 1.1, 5.11.

---

[8] As noted above, *supra* Part III(B), Dr. Bennett must establish the three elements of *Monell* liability in order to hold TCCD liable under § 1983. *Saenz*, 2011 WL 1935742, at *3. As with her First Amendment retaliation claim, the Court does not analyze the first two prongs of *Monell* liability because it finds that Dr. Bennett has failed to sufficiently plead a violation of her constitutional rights.

i.  *Liberty interests*

Dr. Bennett's first claim that TCCD deprived her of her liberty interest in freedom of speech by denying her a hearing fails. The Court has already determined that Dr. Bennett has not sufficiently pleaded that her First Amendment rights were violated by TCCD. A due process claim requires the Government to have deprived a "protected life, liberty, or property interest." *Greene v. Greenwood Pub. Sch. Dist.*, 890 F.3d 240, 242 (5th Cir. 2018) (citing *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010)). Without a well-pleaded First Amendment claim, Dr. Bennett has failed to plead that she was deprived of a protected liberty interest. Thus, Dr. Bennett's first procedural due process claim must be dismissed.

ii.  *Property rights*

Next, Plaintiff alleges that TCCD deprived her of her property interest in contract by either the non-renewal of her contract or her final termination. Doc. 6, Am. Compl., ¶¶ 5.9–5.11. "Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . .'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 537–39 (1985) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 575–77 (1972)). For an employment benefit to rise to the level of a property interest, "a person clearly must have more than an abstract need or desire for it. [She] must have more than a unilateral expectation of it. [She] must, instead, have a legitimate claim of entitlement to it." *Daly v. Sprague*, 675 F.2d 716, 726 (5th Cir. 1982) (quoting *Roth*, 408 U.S. at 577). Generally, "[p]ublic employees have a constitutionally protected property interest in their continued employment if the employer's 'right to terminate without cause is eliminated.'" *Short v. Gusman*, 806 F. App'x 264, 268 (5th Cir. 2020) (quoting *Stem v. Gomez*, 813 F.3d 205, 210 (5th Cir. 2016)).

- 18 -

However, "an employee who is terminable at will generally has no constitutionally-protected property interest." *Id.*; *Youngblood v. City of Galveston*, 920 F. Supp. 103, 106 (S.D. Tex. 1996) (citing *Irby v. Sullivan*, 737 F.2d 1418, 1422 (5th Cir. 1984)).

As discussed in Part III(C)(2), the Court finds that Dr. Bennett has failed to sufficiently plead that her at-will employment was modified by the EDP. For the same reason, the Court finds that Dr. Bennett did not have a constitutionally protected property interest in her continued employment at the time of her termination. *See Short*, 806 F. App'x at 268. As for the non-renewal of Dr. Bennett's original employment contract, the Court notes that Dr. Bennett's contract explicitly stated that "[TCCD] shall not be obligated to automatically renew every employee's contract." *See* Doc. 8-3, Def.'s Ex. C. This language similarly defeats any suggestion that Dr. Bennett's had a constitutionally protected property interest in the renewal of her contract. C*f. Fitts v. Crain*, 108 F. App'x 865, 868 (5th Cir. 2004).

Because Dr. Bennett has failed to sufficiently plead that she maintained a protected property interest in her employment, her procedural due process must be dismissed.

The Motion to Dismiss Dr. Bennett's procedural due process claims is **GRANTED**.

2.    Substantive Due Process Violations

Dr. Bennett alleges TCCD violated her substantive due process rights by acting arbitrarily and capriciously in denying Dr. Bennett her property interest in contract. Doc. 6, Am. Compl., ¶¶ 5.8–5.14, 5.17. To establish a substantive due process claim in the public employment context, the plaintiff "must show that [s]he had a clearly-established property interest/right in [her] employment, and that the public employer's termination of that interest was arbitrary or capricious." *Hill v. Silsbee Indep. Sch. Dist.*, 933 F. Supp. 616, 624 (E.D. Tex. 1996). As discussed above,

Dr. Bennett has not sufficiently pled that she had a property right in her employment. Thus, she has not sufficiently plead a claim for substantive due process. Therefore, the motion to dismiss Dr. Bennett's substantive due process claim is **GRANTED**.

E.      *Leave to Amend*

Given that this is the Court's first opportunity to assess the sufficiency of Dr. Bennett's allegations, the Court deems it appropriate to provide her one chance to amend her pleadings in light of the deficiencies noted in this Order. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). This second amended complaint shall be filed within **TWENY-ONE (21)** days of the date of this Order.

## IV.

### CONCLUSION

For the reasons explained above, the Court **GRANTS** TCCD's Construed Partial Motion to Dismiss (Doc. 8). Specifically, the Court **GRANTS** TCCD's Motion and **DISMISSES WITHOUT PREJUDICE** Dr. Bennett's claims for:

- Sex discrimination under Title VII and the TERA;

- Age discrimination under the ADEA;

- Retaliation in violation of her First Amendment rights;

- Breach of contract based on the original contract's notice provision;

- Breach of contract based on the EDP; and

- Violations of her procedural and substantive due process rights.

Within **TWENTY-ONE (21)** days of this Order, Dr. Bennett is **ORDERED** to file a second amended complaint as described in Part E, *supra*. From the date of Dr. Bennett's filing, TCCD has

**FOURTEEN (14)** days to file an answer or other responsive pleading pursuant to Federal Rule of Civil Procedure 15(a)(3).

 

      SO ORDERED.

      SIGNED: August 15, 2022.

                                JANE J. BOYLE
                                UNITED STATES DISTRICT JUDGE