UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DR. KRISTEN BENNETT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:22-CV-0289-B |
| | § | |
| TARRANT COUNTY COLLEGE | § | |
| DISTRICT, | § | |
| | § | |
| Defendant. | § | |

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendant Tarrant County College District ("TCCD")'s Motion to Dismiss Plaintiff Dr. Kristen Bennett's Second Amended Complaint. Doc. 21, Mot. Dismiss. The case concerns Dr. Bennett's termination from employment at TCCD. Dr. Bennett alleges TCCD terminated her for discriminatory reasons in violation of the Constitution, the parties' employment contracts, Title VII, and Title IX. For the following reasons, the Court **GRANTS in part** and **DENIES in part** TCCD's Motion to Dismiss.

The Court **DENIES** the Motion as to Dr. Bennett's claim for breach of contract based on TCCD "taking action against Dr. Bennett in retaliation for her exercise of protected speech or academic freedom and responsibilities." *See* Doc. 20, Second Am. Compl., ¶ 5.3. This claim survives the Motion.

Dr. Bennett's claims for (1) retaliation under Title VII and (2) breaches of contract for (a) choosing not to renew her contract or otherwise discriminating against Dr. Bennett for unlawfully discriminatory reasons, (b) not making a recommendation through the normal administrative channels prior to choosing not to renew her contract, and (c) choosing not to

renew her contract in retaliation for bringing a complaint against Dr. Giovannini are **DISMISSED WITHOUT PREJUDICE.**

And Dr. Bennett's claims for (1) discrimination under Title VII, (2) retaliation in violation of her First Amendment free speech rights pursuant to 42 U.S.C. § 1983, (3) violation of her Fourteenth Amendment procedural due process rights pursuant to § 1983, (4) breaches of contract based on (a) her original contract's notice provision and (b) her EDP, and (5) discrimination and retaliation under Title IX are **DISMISSED WITH PREJUDICE**.

## I.

## BACKGROUND

A.    *Factual Background*[1]

This is an employment case concerning allegations of discrimination and retaliation arising out of Dr. Bennett's employment with TCCD. TCCD is a community college district that operates a system of community colleges in and around Tarrant County. Doc. 20, Second Am. Compl., ¶ 2.2. From October 1, 2020, to January 31, 2022, Dr. Bennett worked for TCCD as its Executive Vice President for Advancement. *Id.* ¶ 4.1. Dr. Bennett's supervisor during this time was the then-chancellor of TCCD, Dr. Eugene Giovannini. *Id.* ¶ 3.1.

On July 13, 2021, Dr. Bennett met with a female subordinate to discuss a workplace conflict between the subordinate and a colleague. *Id.* ¶ 4.6. Disputes between the subordinate and other employees continued for four weeks after this initial incident. *Id.* ¶ 4.10. Dr. Bennett alleges she disciplined the subordinate in an effort to correct her behavior. *Id.*

On August 17, 2021, Dr. Giovannini summoned Dr. Bennett to his office to discuss Dr. Bennett's behavior in an earlier meeting. *Id.* ¶ 4.11. At this meeting, Dr. Bennett first noticed

---

[1] The Court derives the factual background from Dr. Bennett's Second Amended Complaint (Doc. 20).

that Dr. Giovannini's attitude and demeanor toward her "had . . . changed." *Id.* The two met again on August 31, 2021, at which time Dr. Giovannini informed Dr. Bennett that he was placing her on an executive development plan ("EDP"), which is the equivalent of a personal improvement plan ("PIP"). *Id.* ¶ 4.12. Dr. Giovannini told Dr. Bennett that she would be on the EDP until December 31, 2021. *Id.* ¶ 4.15. Additionally, he informed her that her contract was not being renewed, that she could be "let go" at any time, and that she would be required to meet with Dr. Giovannini every two weeks. *Id.*

On October 28, 2021, TCCD's Associate General Counsel, Carol Bracken, told Dr. Bennett that Dr. Giovannini was rumored to be having an inappropriate relationship with the female subordinate that Dr. Bennett had disciplined. *Id.* ¶ 4.22. Despite the rumors, Bracken believed there was not enough information to start an investigation. *Id.* ¶ 4.25. Bracken added it was her personal opinion that Dr. Bennett should not have been put on the EDP. *Id.* ¶ 4.26.

On November 15, 2021, Dr. Bennett resigned from her position, stating that her last day would be January 31, 2022. *Id.* ¶¶ 4.31–4.32. However, on December 2, 2021, Dr. Bennett rescinded her resignation and filed an internal grievance against Dr. Giovannini. *Id.* ¶ 4.34. Shortly after her rescission, Dr. Bennett was placed on paid administrative leave and prohibited from entering campus. *Id.* ¶¶ 4.40–4.41. On January 14, 2022, Dr. Bennett made a "written demand for a due process hearing," which TCCD denied. *Id.* ¶ 4.43. Dr. Bennett's employment with TCCD ended on January 31, 2022, though the parties dispute whether she was terminated or TCCD merely accepted Dr. Bennett's resignation. *Id.* ¶¶ 4.1, 4.40–4.44; Doc. 21, Mot. Dismiss, 10.

On December 30, 2021, Dr. Bennett submitted complaints of discrimination and retaliation to the Texas Workforce Commission Civil Rights Division ("TWC-CRD") and the

United States Equal Employment Opportunity Commission ("EEOC"). Doc. 20, Second Am. Compl., ¶ 4.45.

B.      *Procedural Background*

        This suit was filed February 7, 2022. *Id.* ¶ 4.46. On March 24, 2022, Dr. Bennett received her Notices of Right to Sue and subsequently filed her First Amended Complaint within ninety days of receiving notice. *Id.* ¶ 4.47. TCCD then moved to dismiss some of Dr. Bennett's claims. Doc. 8, Mot. Dismiss. The Court granted TCCD's motion and dismissed without prejudice Dr. Bennett's claims for sex discrimination under Title VII and the TERA, age discrimination under the ADEA, retaliation in violation the First Amendment, breach of contract based on the original contract's notice provision, breach of contract based on the EDP, and violations of her procedural and substantive due process rights. Doc. 19, Mem. Op. & Order, 20. In the Order, the Court gave Dr. Bennett "one chance to amend her pleadings." *Id.*

        Dr. Bennett filed her Second Amended Complaint on September 5, 2022. Doc. 20, Second Am. Compl. She brings claims against TCCD for (1) discrimination and retaliation under Title VII and Title IX, (2) retaliation in violation of her First Amendment free speech rights pursuant to 42 U.S.C. § 1983, (3) violation of her Fourteenth Amendment procedural due process rights pursuant to § 1983, and (4) breaches of contract based on (a) her original employment contract and (b) her EDP. *Id.* ¶¶ 5.1–5.21. TCCD filed a second motion to dismiss Dr. Bennett's claims. Doc. 21, Mot. Dismiss. The Motion is ripe for review and the Court considers it below.

## II.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "the Court must accept all well-pleaded facts as true, and view them in the light most favorable to the plaintiff." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (alterations and internal quotations omitted). But the Court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). When well-pleaded facts fail to meet this standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (quotation marks and alterations omitted).

"In deciding a motion to dismiss the court may consider documents attached to or incorporated in the complaint and matters of which judicial notice may be taken." *U.S. ex rel.*

*Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 379 (5th Cir. 2003). The Court may consider documents attached to a defendant's motion to dismiss to the extent that those documents are referred to in the complaint and are central to the plaintiff's claims. *Causey v. Sewell Cadillac–Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

## III.

## ANALYSIS

The Court begins by addressing Dr. Bennett's discrimination and retaliation claims based on violations of Title VII and Title IX. The Court then examines her First Amendment retaliation and due process claims. Finally, the Court addresses Dr. Bennett's breach-of-contract claims.

### A.    *Title VII & Title IX Claims*

Dr. Bennett asserts claims for sex discrimination and retaliation under Title VII and Title IX. Doc. 20, Second Am. Compl., ¶¶ 5.20–5.21. TCCD argues, and Dr. Bennett does not contest, that Dr. Bennett's claims under Title IX are preempted by Title VII. *See* Doc. 21, Mot. Dismiss, 14; Doc. 24, Resp., 3–9. The Court agrees. In federally funded educational institutions Title VII provides the exclusive remedy for claims of employment discrimination on the basis of sex, *Lakoski v. James*, 66 F.3d 751, 753 (5th Cir. 1995), and for retaliation against conduct protected by Title VII, *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 248 (5th Cir. 1997). TCCD is a federally funded educational institution, so Title VII provides the exclusive remedy for the claims Dr. Bennett asserts under Title IX. Accordingly, Dr. Bennett's claims for sex discrimination and retaliation under Title IX are **DISMISSED WITH PREJUDICE**.

### 1.    Sex Discrimination Under Title VII

Title VII makes it unlawful for employers to "discriminate against any individual with

respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Under the *McDonnell Douglas* burden-shifting framework employed in such cases, a plaintiff must first establish a prima facie case of discrimination by showing that she

> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside [her] protected group or was treated less favorably than other similarly situated employees outside the protected group.

*McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).[2] The parties do not dispute the first two prongs.

To satisfy the fourth element—the "similarly situated" prong—the employee must establish that she was "treated less favorably than a similarly situated employee outside of her protected class in nearly identical circumstances." *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 998 (5th Cir. 2022).

> [C]ritically, the plaintiff's conduct that drew the adverse employment decision must have been nearly identical to that of the proffered comparator who allegedly drew dissimilar employment decisions. If the difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts for* the difference in treatment received from the employer, the employees are not similarly situated for the purposes of an employment discrimination analysis.

*Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (internal citations and quotations omitted). Additionally, courts consider factors such as "job responsibility, experience, and qualifications" to determine whether an employee is similarly situated. *Saketkoo*, 31 F.4th at 998.

In her Second Amended Complaint, Dr. Bennett contends she was punished without

---

[2] Title VII plaintiffs are also required to exhaust their administrative remedies before seeking judicial relief. See 42 U.S.C. § 2000e-5(e)(1). The parties do not appear to dispute that Dr. Bennett satisfied the exhaustion requirement. *See* Doc. 20, Second Am. Compl., ¶¶ 4.45–4.47; Doc. 21, Mot. Dismiss.

cause while Dr. Giovannini was given "preferential treatment" and Dr. Giovannini created a hostile work environment[3] by punishing Dr. Bennett for speech he "did not find offensive in males, thereby imposing gender stereotyping upon plaintiff."[4] Doc. 20, Second Am. Compl., ¶¶ 5.10(2), 5.10(10). TCCD argues that Dr. Bennett did not sufficiently plead (1) an adverse employment action and (2) less favorable treatment than a similarly situated employee. Doc. 21, Mot. Dismiss, 15. The Court finds that Dr. Bennett has failed to sufficiently plead facts supporting her Title VII sex discrimination claim.

Assuming without deciding that Dr. Bennett could satisfy the first three requirements of a prima facie discrimination case, she has not sufficiently pleaded that she was treated differently than a similarly situated male. "[F]or employees to be similarly situated[,] those employees' circumstances, including their misconduct, must have been 'nearly identical.'" *See Perez v. Tex. Dep't of Crim. Just.*, 395 F.3d 206, 213 (5th Cir. 2004). "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Lee*, 574 F.3d at 260.

Dr. Bennett argues her immediate predecessor as head of advancement, Joe McIntosh, was similarly situated and received more favorable treatment from Dr. Giovannini. *See* Doc. 20,

---

[3] As the Court previously noted, *see* Doc. 19, Mem. Op. & Order, 7 n.5, the Court understands Dr. Bennett's reference to a "hostile work environment" as simply referring to Dr. Giovannini's alleged disparate treatment of Dr. Bennett—not bringing a separate Title VII hostile work environment claim.

[4] "An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). Thus, the Court analyzes Dr. Bennett's claims pertaining to TCCD and Dr. Giovannini.

Second Am. Compl., ¶¶ 4.3–4.5, 5.21. But Dr. Bennett does not allege that Mr. McIntosh ever confronted Dr. Giovannini concerning his relationship with the female subordinate. This "difference between [Dr. Bennett's] conduct and that of [Mr. McIntosh likely] *accounts for* the difference in treatment received from [Dr. Giovannini]," making "the employees . . . not similarly situated for the purposes of an employment discrimination analysis." *See Lee*, 574 F.3d at 260. Dr. Bennett and Mr. McIntosh may have "literally had the same role," *see* Doc. 20, Second Am. Compl., ¶ 4.4, but their difference in conduct makes them not similarly situated for the purposes of Dr. Bennett's claim. Because Dr. Bennett has not alleged a similarly situated employee, Dr. Bennett's Title VII sex discrimination is **DISMISSED WITH PREJUDICE**.

    2.    <u>Retaliation Under Title VII</u>

Title VII makes it unlawful for an employer to "discriminate against any of [its] employees . . . because [she] has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Under the *McDonnell Douglas* burden-shifting framework, a plaintiff must first establish a prima facie case of discrimination by showing: "(1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action." *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020) (internal quotations omitted). TCCD argues Dr. Bennett has not sufficiently alleged an adverse employment action or an activity protected by Title VII. Doc. 21, Mot. Dismiss, 18.

The Court finds Dr. Bennett fails to show that she engaged in a protected activity. "An employee has engaged in activity protected by Title VII if she has either (1) 'opposed any

practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996) (quoting 42 U.S.C. § 2000e–3(a)). Dr. Bennett claims that she was retaliated against for two activities: (1) speaking to the female employee in question for corrective action and (2) filing a grievance.[5] Doc. 20, Second Am. Compl., ¶¶ 5.10(5)–(6), 5.20.

Dr. Bennett does not allege that, in either of these activities, she was "oppos[ing] any practice made an unlawful employment practice by Title VII or . . . ma[king] a charge, testif[ying], assist[ing], or participat[ing] in any manner in an investigation, proceeding, or hearing under Title VII." *See Long*, 88 F.3d at 304. An employee's use of their employer's internal grievance mechanisms is a protected activity if the employee used the grievance mechanisms to oppose a practice made an unlawful employment practice by Title VII. *See id.* at 306 n.5. However, in her grievance, Dr. Bennett does not complain that Dr. Giovannini's conduct constituted an unlawful employment practice under Title VII. *See* Doc. 20-1, Ex. A. Instead, the grievance alleges Dr. Giovannini retaliated against Dr. Bennett for asking her subordinate to apologize and because Dr. Bennett knew of Dr. Giovannini's relationship with the subordinate. *See id.* The type of retaliation alleged in the grievance is not an unlawful employment practice under Title VII. Because Dr. Bennett does not show she engaged in a protected activity under Title VII, Dr. Bennett's Title VII retaliation claim is **DISMISSED WITHOUT PREJUDICE**.

---

[5] The Court interprets this reference to "filing a grievance" as referring to Dr. Bennett's grievance against Dr. Giovannini filed with TCCD, not her complaint against TCCD filed with the TWC-CRD and the EEOC. Dr. Bennett alleges TCCD retaliated against her by "placing her on leave and barring her from campus." Doc. 20, Second Am. Compl., ¶ 5.10(6). These actions occurred before Dr. Bennett filed her complaint with the TWC-CRD and the EEOC. *Id.* ¶¶ 4.40–4.41, 4.45.

B.    *First Amendment Retaliation and Due Process Claims*

Dr. Bennett claims TCCD violated her First Amendment rights by retaliating against her for exercising her free speech rights. Doc. 20, Second Am. Compl., ¶¶ 5.11–5.12. She also alleges TCCD violated her constitutional due process rights by terminating or failing to renew her contract. *Id.* ¶ 5.13. Dr. Bennett argues that TCCD is therefore liable under 42 U.S.C. § 1983 for violating her constitutional rights. *Id.* ¶ 1.1. TCCD moved to dismiss these claims, arguing Dr. Bennett has not sufficiently pled violations of her free speech or due process rights. Additionally, TCCD contends that it is not liable because Dr. Bennett failed to allege a policymaker under § 1983. Because the Court finds Dr. Bennett has not shown municipal liability under § 1983, the Court dismisses her claims for violations of her free speech and due process rights.

Section 1983 prohibits government officials, acting under color of state law, from depriving individuals of rights guaranteed under the Constitution or laws of the United States. *Saenz v. Dall. Cnty. Cmty. Coll. Dist.*, 2011 WL 1935742, at *3 (N.D. Tex. May 16, 2011) (O'Connor, J.). A municipal entity like TCCD cannot be held vicariously liable under § 1983 for the individual acts of its employees. 42 U.S.C. § 1983. Instead, for a municipal entity to be held liable under § 1983, there must be (1) "a policymaker"; (2) "an official policy"; and (3) "a violation of a constitutional right whose 'moving force' is the policy or custom." *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). The first element requires "proof that an official policymaker with actual or constructive knowledge of the constitutional violation acted on behalf of the municipality." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 167 (5th Cir. 2010). Dr. Bennett fails to meet this requirement.

Dr. Bennett argues that Dr. Giovannini is a policymaker for purposes of *Monell* liability.

Doc. 24, Resp., 12–13. Courts determine policymaker status by reference to state law. *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). In Texas, a junior college board of trustees is the final policymaker for the junior college district. *See* Tex. Educ. Code §§ 11.051, 130.084(a); *Saenz*, 2011 WL 1935742, at *5. So TCCD's sole policymaker is its board of trustees.

Dr. Bennett argues TCCD is nonetheless liable for Dr. Giovannini's actions in this case because TCCD's board of trustees delegated final policymaking authority to Dr. Giovannini or ratified his actions. In support, Dr. Bennett points to Dr. Giovannini's ability "to place Dr. Bennett on a EIP, to place her on leave, and ultimately to terminate her employment with TCCD." *See* Doc. 24, Resp., 13. But delegation of authority to make final employment decisions, without more, does not show delegation of policymaker status for purposes of § 1983. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 129–30 (1988) (plurality opinion); *Bolton v. City of Dall.*, 541 F.3d 545, 549 (5th Cir. 2008). The Fifth Circuit, using an example given by the plurality opinion in *Pembaur v. City of Cincinnati*, 475 U.S. 469, 484 (1986), explained,

> [I]f county employment policy was set by the Board of County Commissioners, only that body's decisions would provide a basis for county liability. This would be true even if the Board left the Sheriff discretion to hire and fire employees and the Sheriff exercised that discretion in an unconstitutional manner; the decision to act unlawfully would not be a decision of the Board. However, if the Board delegated its power to establish final employment policy to the Sheriff, the Sheriff's decisions *would* represent county policy and could give rise to municipal liability.

*Bolton*, 541 F.3d at 549 n.3 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 484 (1986) (plurality opinion)). "[S]imply going along with discretionary decisions made by one's subordinates . . . is not a delegation to them of the authority to make policy." *Jett v. Dall. Indep. Sch. Dist.*, 7 F.3d 1241, 1247 (5th Cir. 1993) (quoting *Praprotnik*, 485 U.S. at 130). There is no evidence that Dr. Giovannini's decisions to place Dr. Bennett on the EDP or not renew her

contract were "cast in the form of a policy statement and expressly approved by the supervising policymaker," or that the decisions "manifested a 'custom or usage' of which [TCCD's board of trustees] must have been aware." *Id.* (quoting *Praprotnik*, 485 U.S. at 127, 130). So these decisions alone do not demonstrate delegation of policymaking authority.

Dr. Bennett also fails to show that TCCD's board of trustees ratified Dr. Giovannini's actions. "If a final policymaker approves a subordinate's recommendation and also the subordinate's reasoning, that approval is considered a ratification chargeable to the municipality." *Culbertson v. Lykos*, 790 F.3d 608, 621 (5th Cir. 2015). "This theory of ratification has been limited to 'extreme factual situations.'" *Id.* Dr. Bennett alleges that the board of trustees was "specifically made aware of Giovannini's conduct, . . . but at all times acquiesc[ed] in [Dr.] Giovannini's treatment of Dr. Bennett." Doc. 24, Resp. 14. Dr. Bennett does not allege that TCCD's board approved Dr. Giovannini's reasoning—only that "[his] actions were let stand." *See id.* Because ratification is limited to "extreme factual situations" where a final policymaker approves a subordinates reasoning, *see Culbertson* 790 F.3d at 621, the Court finds that Dr. Bennett has not shown that TCCD's board of trustees ratified Dr. Giovannini's actions.

For these reasons, the Court finds that Dr. Bennett has not alleged a municipal policymaker. Because Dr. Bennett has not alleged a policymaker, she cannot show an official policy. *See Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017) (requiring an official policy to be promulgated by the municipal policymaker).

And "[b]ecause Plaintiff fails to adequately plead an official policy, the Court need not address whether Plaintiff sufficiently alleged a constitutional violation." *See Maxwell v. Mesquite Indep. Sch. Dist.*, 2022 WL 2392410, at *4 (N.D. Tex. July 1, 2022) (Scholer, J.) (*citing Gomez v. Galman*, 18 F.4th 769, 777 (5th Cir. 2021)). Dr. Bennett's § 1983 claims against TCCD for

violations of her free speech and due process rights are therefore **DISMISSED WITH PREJUDICE**.

C.      *Breach-of-Contract Claims*

A plaintiff seeking to recover on a breach-of-contract claim must show "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (quoting *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)). Dr. Bennett alleges TCCD breached the parties' original written employment contract and the EDP contract by violating various TCCD employment policies that were incorporated into the contracts. Doc. 20, Second Am. Compl., ¶¶ 5.1–5.2. As noted above, the Court can review documents attached to a defendant's motion to dismiss to the extent that those documents are referred to in the complaint and are central to the plaintiff's claims. *Causey*, 394 F.3d at 288. Here, the Court analyzes Dr. Bennett's breach-of-contract claims by reference to her original contract and the EDP, both attached to TCCD's Motion to Dismiss, since both were referenced in Dr. Bennett's complaint and are central to her claims. *See* Doc. 20, Second Am. Compl., ¶¶ 5.1–5.10, 5.6.[6]

Texas presumes employment is at-will. *Thomas v. Long*, 207 S.W.3d 334, 341 (Tex. 2006). So, "absent a specific agreement to the contrary, employment may be terminated by the employer or the employee at will, for good cause, bad cause, or no cause at all." *Montgomery Cnty. Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998). "To rebut the presumption of employment at will, an employment contract must directly limit in a 'meaningful and special way'

---

[6]The Second Amended Complaint contains two paragraphs numbered 5.6. *See* Doc. 20, Second Am. Compl., 22–23, 25.

the employer's right to terminate the employee without cause." *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 478 (5th Cir. 2000) (per curiam) (quoting *Rios v. Tex. Com. Bancshares, Inc.*, 930 S.W.2d 809, 815 (Tex. App.—Corpus Christi 1996, writ denied)). The employee has the burden of proving the at-will relationship was modified. *Dworschak v. Transocean Offshore Deepwater Drilling, Inc.*, 352 S.W.3d 191, 196 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

"[E]mployee handbooks or manuals generally do not alter the at-will employment relationship . . . ." *In re Sun Coast Res., Inc.*, 562 S.W.3d 138, 159 (Tex. App.—Houston [14th Dist.] 2018, no pet.). "An employee handbook . . . does not create property interests in stated benefits and policies unless some specific agreement, statute, or rule creates such an interest." *Parviz-Khyavi v. Alcon Lab'ys, Inc.*, 395 S.W.3d 376, 382 (Tex. App.—Dallas 2013, pet. denied) (internal quotations omitted). "[A]bsent any express reciprocal agreement regarding discharge, [government] personnel policies or employee handbooks constitute no more than general guidelines and do not create contractual rights in employees." *Heggemeier v. Caldwell Cnty.*, 826 F.3d 861, 871 (5th Cir. 2016) (internal quotations omitted). "To create contractual rights, [an employment] policy must specifically and expressly limit the employer's ability to terminate the employee. The policy must contain an explicit contractual term altering the at-will relationship, and must alter that relationship in a meaningful and special way." *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 862 (5th Cir. 1999) (internal quotations and citations omitted). Provisions of a policy manual "merely explain[ing] the termination procedure[s] that the supervisor should employ" do not modify at-will employment status. *Williams v. First Tenn. Nat. Corp.*, 97 S.W.3d 798, 803 (Tex. App.—Dallas 2003, no pet.).

Dr. Bennett contends TCCD breached two separate contracts: (1) the original written employment contract that expired on August 31, 2021, and (2) the EDP Dr. Bennett was placed

on starting September 1, 2021. Doc. 20, Second Am. Compl., ¶ 5.1. She argues that these contracts incorporated various TCCD policies and TCCD breached the contracts by violating these policies. *Id.* ¶ 5.2. Dr. Bennett claims TCCD violated its policies by (1) "taking action against Dr. Bennett in retaliation for her exercise of protected speech or academic freedom and responsibilities," *see id.* ¶ 5.3; (2) choosing not to renew her contract or otherwise discriminating against Dr. Bennett for unlawfully discriminatory reasons, *see id.* ¶¶ 5.4, 5.6–5.7; (3) choosing not to renew her contract without a recommendation through normal administrative channels, *see id.* ¶ 5.5; and (4) choosing not to renew her contract in retaliation for bringing a complaint against Dr. Giovannini, *see id.* ¶¶ 5.8–5.9.[7] TCCD argues that these claims should be dismissed for five reasons, which the Court discusses below. *See* Doc. 21, Mot. Dismiss, 5–9.

First, TCCD argues, "Plaintiff's breach of contract claims of discrimination and/or retaliation based on the same factual basis supporting her Title VII claims should be dismissed because Title VII and/or the TCHRA is the exclusive remedy for these claims." *Id.* at 5–6. In federally funded educational institutions Title VII provides the exclusive remedy for claims for employment discrimination on the basis of sex, *Lakoski*, 66 F.3d at 753, and for retaliation against conduct protected by Title VII, *Lowrey*, 117 F.3d at 248. Where Title VII provides an exclusive remedy for employment discrimination, state-law claims based in employment discrimination are barred. *See, e.g., Hampton v. I.R.S.*, 913 F.2d 180, 182–83 (5th Cir. 1990) (per curiam) (holding a state-law tort claim based on conduct made unlawful by Title VII was preempted by Title VII). Thus Dr. Bennett's breach of contract claim based on sex discrimination or retaliation made

---

[7] Dr. Bennett makes other allegations in support of her breach of contract claims. *See* Doc. 20, Second Am. Compl., ¶¶ 5.10(1)–(10). These claims are either duplicative of the claims enumerated above or do not create contractual rights because they are "provision[s] merely explain[ing] the termination procedure[s] that the supervisor should employ." *Williams*, 97 S.W.3d at 803.

unlawful by Title VII is **DISMISSED WITHOUT PREJUDICE**.

Second, TCCD argues its policies did not require TCCD to make a recommendation of non-renewal through normal administrative channels. Doc. 21, Mot. Dismiss, 6–8. Even if the policies require this recommendation, the policy provisions "merely explain[] the termination procedure[s] that the supervisor should employ" and thus does not create a contractual right. *See Williams*, 97 S.W.3d at 803. Thus, Dr. Bennett's claim based on TCCD choosing not to renew her contract without recommendation are **DISMISSED WITHOUT PREJUDICE**.

TCCD's third argument is that TCCD was not required to provide Dr. Bennett written notice of her non-renewal. Doc. 21, Mot. Dismiss, 8–9. The notice provision in the polices is simply an explanation of termination procedures and not an "express reciprocal agreement regarding discharge." *See Heggemeier*, 826 F.3d at 871. Thus, Dr. Bennett's claim based on TCCD choosing not to renew her contract without notice are **DISMISSED WITH PREJUDICE**.

Fourth, TCCD argues the Court should dismiss Dr. Bennett's claim that TCCD breached her employment contract by choosing not to renew her contract in retaliation for bringing a complaint. Doc. 21, Mot. Dismiss, 8. TCCD argues that it chose not to renew Dr. Bennett's contract before she filed her grievance against Dr. Giovannini. *Id.* Dr. Bennett responds that she is alleging Dr. Giovannini retaliated against her for disciplining her subordinate. Doc. 24, Resp., 20.

The policy at issue is "DGBA(LOCAL)." *See* Doc. 20, Second Am. Compl., ¶ 5.8. The "Freedom from Reprisals" paragraph of the policy states, "No reprisals or retaliation of any kind shall be taken at any level against an employee for bringing a complaint." Doc. 21-6, Ex. F, 2. DGBA(LOCAL) defines a complaint "as an unresolved issue concerning the application of College District policy, practice, or regulation [including] disciplinary action." *Id* at 1. To bring a

complaint, an employee first raises the issue with their immediate supervisor and then proceeds up the line of authority if the matter remains unresolved. *See id.* at 2–3. Dr. Bennett's "actions to counsel her female subordinate" were not "bringing a complaint" within the meaning of DGBA(LOCAL). The discussion did not concern "an unresolved issue concerning the application of College District policy, practice, or regulation," and Dr. Bennett did not follow the procedures for bringing a complaint. *See id.* at 1–3. The Court therefore finds that Dr. Bennett has not stated a claim for breach of contract based on the "Freedom from Reprisals" paragraph of DGBA(LOCAL). Thus, Dr. Bennett's contractual claim against TCCD for choosing not to renew her contract in retaliation for disciplining her subordinate are **DISMISSED WITHOUT PREJUDICE**.

Fifth and finally, TCCD claims "most of Plaintiff's violation allegations are not prohibited by the specific policies cited by Plaintiff." Doc. 21, Mot. Dismiss, 9. TCCD provides two examples, *see id.*, neither of which address Dr. Bennett's claim that TCCD breached its written contract with Dr. Bennett by "taking action against Dr. Bennett in retaliation for her exercise of protected speech or academic freedom and responsibilities," *see* Doc. 20, Second Am. Compl., ¶ 5.3. Because TCCD's Motion does not identify any specific deficiency with this claim, the Court presumes that this claim is an exception to TCCD's argument about the deficiency of "[m]ost of Plaintiff's violation allegations." *See* Doc. 21, Mot. Dismiss, 9.

To the extent TCCD did intend this argument to apply, the Court declines to make TCCD's arguments for it. "[D]espite the natural focus on the allegations of the operative pleading, the movant has the burden on a motion to dismiss under Rule 12(b)(6)." *Cantu v. Guerra*, 2021 WL 2636017, at *1 (W.D. Tex. June 25, 2021). Given the limited basis TCCD provides, "additional assessment would essentially amount to judicial screening of the claims

asserted in this case. But Rule 12(b)(6) is not a judicial screening mechanism . . . ." *Id.* The Court therefore finds that Dr. Bennett's claim that TCCD violated its policies by "taking action against Dr. Bennett in retaliation for her exercise of protected speech or academic freedom and responsibilities," *see* Doc. 20, Second Am. Compl., ¶ 5.3, survives the motion to dismiss.

In sum, Dr. Bennett's breach of contract claim based on (1) sex discrimination or retaliation made unlawful by Title VII, (2) TCCD choosing not to renew her contract without recommendation, (3) TCCD choosing not to renew her contract without notice, and (4) TCCD choosing not to renew her contract in retaliation for disciplining her subordinate are **DISMISSED**. Because one breach of contract claim survives, the Motion to Dismiss is **GRANTED in part** and **DENIED in part**.

### D.    Leave to Amend

"[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). The Court notes that the liberal standard for leave to amend a complaint under Rule 15(a) is "tempered by the necessary power of a district court to manage a case." Fed. R. Civ. P. 15(a); *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003).

The Court has already once dismissed Dr. Bennett's claims for sex discrimination under Title VII, retaliation in violation of the First Amendment, violation of her procedural due process rights, and breach of contract based on the original contract's notice provision and the EDP. Doc. 19, Mem. Op. & Order, 20. Previously, "the Court deem[ed] it appropriate to provide [Dr. Bennett] one chance to amend her pleadings in light of the deficiencies noted in [the

Court's August 16, 2022] Order." *Id.* The Court finds granting Dr. Bennett leave to amend these claims in a third amended complaint would be futile. In addition, because Dr. Bennett's claims for sex discrimination and retaliation under Title IX are precluded as a matter of law by Title VII, the Court finds granting Dr. Bennett leave to amend these claims would be futile. Dr. Bennett's claims for (1) discrimination under Title VII, (2) retaliation in violation of her First Amendment free speech rights pursuant to § 1983, (3) violation of her Fourteenth Amendment procedural due process rights pursuant to § 1983, (4) breaches of contract based on (a) her original contract's notice provision and (b) her EDP, and (5) discrimination and retaliation under Title IX are therefore **DISMISSED WITH PREJUDICE**.

Because the Court's previous order (Doc. 19) was on a construed partial motion to dismiss, *see* Doc. 19, Mem. Op. & Order, 4 n.3, 20–21, the Court deems it appropriate to provide Dr. Bennett a final chance to amend her pleadings on her remaining claims, which were not considered in the previous order. Dr. Bennett's claims for (1) retaliation under Title VII and (2) breaches of contract for (a) choosing not to renew her contract or otherwise discriminating against Dr. Bennett for unlawfully discriminatory reasons, (b) not making a recommendation through the normal administrative channels prior to choosing not to renew her contract, and (c) choosing not to renew her contract in retaliation for bringing a complaint against Dr. Giovannini are therefore **DISMISSED WITHOUT PREJUDICE.**

## IV.

## CONCLUSION

For the reasons explained above, the Court **GRANTS in part** and **DENIES in part** TCCD's Motion to Dismiss (Doc. 21). The Court **DISMISSES WITH PREJUDICE** Dr. Bennett's claims for

1.  discrimination under Title VII,

2.  retaliation in violation of her First Amendment free speech rights pursuant to § 1983,

3.  violation of her Fourteenth Amendment procedural due process rights pursuant to § 1983,

4.  breaches of contract based on (a) her original contract's notice provision and (b) her EDP, and

5.  discrimination and retaliation under Title IX.

The Court **DISMISSES WITHOUT PREJUDICE** Dr. Bennett's claims for

1.  retaliation under Title VII, and

2.  breaches of contract for

    a.  failing to renew her contract or otherwise discriminating against Dr. Bennett for unlawfully discriminatory reasons,

    b.  not making a recommendation through the normal administrative channels prior to choosing not to renew her contract, and

    c.  failing to renew her contract in retaliation for bringing a complaint against Dr. Giovannini

Within **TWENTY-ONE (21)** days of this Order, Dr. Bennett is **ORDERED** to file a third amended complaint as described in Part D, *supra*. From the date of Dr. Bennett's filing, TCCD has **FOURTEEN (14)** days to file an answer or other responsive pleading pursuant to Federal Rule of Civil Procedure 15(a)(3).

SO ORDERED.

SIGNED: February 7, 2023.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE