UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DR. KRISTEN BENNETT, | § | |
| | § | |
|   Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:22-CV-0289-B |
| | § | |
| TARRANT COUNTY COLLEGE DISTRICT, | § | |
| | § | |
| | § | |
|   Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Tarrant County College District ("TCCD")'s Motion to Dismiss Plaintiff Dr. Kristen Bennett's Fourth Amended Complaint. Doc. 55, Mot. Dismiss. Dr. Bennett alleges TCCD terminated her for discriminatory and retaliatory reasons in violation of the parties' employment contracts and Title VII. For the following reasons, the Court **GRANTS in part** and **DENIES in part** TCCD's Motion to Dismiss. Specifically, the Court **GRANTS** the Motion as to Dr. Bennett's breach-of-contract claims but **DENIES** the Motion as to her Title VII retaliation claim. Dr. Bennett's breach-of-contract claims are **DISMISSED WITH PREJUDICE**.

### I.

### BACKGROUND

A.    *Factual Background*[1]

This is an employment case concerning allegations of discrimination and retaliation arising out of Dr. Bennett's employment with TCCD. TCCD is a community college district that operates

---

[1] The Court derives the factual background from Dr. Bennett's Fourth Amended Complaint (Doc. 53).

- 1 -

a system of community colleges in and around Tarrant County. Doc. 53, Fourth Am. Compl., ¶ 2.2. From October 1, 2020, to January 31, 2022, Dr. Bennett worked for TCCD as its Executive Vice President for Advancement. *Id.* ¶ 4.1. Under the parties' original employment contract, Dr. Bennett's term of employment was from October 1, 2020, to August 31, 2021. *Id.* ¶ 4.12; Doc. 55-1, Mot. Dismiss Ex. A. Dr. Bennett's supervisor during this time was the then-chancellor of TCCD, Dr. Eugene Giovannini. Doc. 53, Fourth Am. Compl., ¶ 3.1.

On July 13, 2021, Dr. Bennett met with a female subordinate to discuss a workplace conflict between the subordinate and a colleague. *Id.* ¶ 4.6. Dr. Bennett asked the subordinate to apologize to her colleague. *Id.* Despite this meeting, disputes between the subordinate and other employees continued for four weeks after this initial incident. *Id.* ¶ 4.10. Dr. Bennett alleges she spoke to the subordinate in an effort to correct her behavior. *Id.*

On August 17, 2021, Dr. Giovannini summoned Dr. Bennett to his office, ostensibly to discuss Dr. Bennett's behavior in an earlier meeting. *Id.* ¶ 4.11. At this meeting, Dr. Bennett first noticed that Dr. Giovannini's attitude and demeanor toward her "had . . . changed." *Id.* The two met again on August 30, 2021, at which time Dr. Giovannini informed Dr. Bennett that he was placing her on an executive development plan ("EDP"), which is the equivalent of a personal improvement plan ("PIP"). *Id.* ¶ 4.12. The next day, Dr. Giovannini gave Dr. Bennett a copy of the EDP and told her that she would be on the EDP until December 31, 2021. *Id.* ¶ 4.15. Additionally, he informed her that her contract was not being renewed, that she could be "let go" at any time, and that she would be required to meet with Dr. Giovannini every two weeks. *Id.*

On October 28, 2021, TCCD's Associate General Counsel, Carol Bracken, told Dr. Bennett that Dr. Giovannini was rumored to be having an inappropriate relationship with the female

subordinate that Dr. Bennett had disciplined. *Id.* ¶ 4.22. Despite the rumors, Bracken believed there was not enough information to start an investigation. *Id.* ¶ 4.25. She added it was her personal opinion that Dr. Bennett should not have been put on the EDP. *Id.* ¶ 4.26.

On November 15, 2021, Dr. Bennett resigned from her position, stating that her last day would be January 31, 2022. *Id.* ¶¶ 4.31–4.32. Dr. Bennett was given permission to share her decision to resign. *Id.* ¶ 4.32. However, on December 2, 2021, Dr. Bennett attempted to rescind her resignation[2] and filed an internal grievance against Dr. Giovannini. *Id.* ¶ 4.34. In the grievance, Dr. Bennett alleged that Dr. Giovannini was having an inappropriate relationship with her subordinate. *Id.* Ex. A. She described Dr. Giovannini's actions towards her and alleged that he was mistreating her because her subordinate shared that she was upset that Dr. Bennett asked her to apologize. *Id.* She claimed his actions towards her created a hostile work environment and constituted an abuse of power. *Id.* "[Dr. Bennett] intended to complain of practices prohibited by Title VII, and TCCD, to the extent it took any action, treated her grievance as a Title VII Complaint." *Id.* ¶ 4.34.

TCCD refused to consider Dr. Bennett's attempt to withdraw her resignation. *Id.* ¶ 5.26. Shortly thereafter, TCCD placed Dr. Bennett on paid administrative leave and prohibited her from entering campus. *Id.* ¶¶ 4.40–4.41. On December 30, 2021, Dr. Bennett submitted complaints of discrimination and retaliation to the Texas Workforce Commission Civil Rights Division ("TWC-

---

[2] Dr. Bennett asserts "she rescinded [her] resignation on December 2, 2021." Doc. 53, Fourth Am. Compl., ¶ 4.34. In general, once an employer accepts an employee's resignation, an employee cannot unilaterally rescind her resignation. *See Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 947 (5th Cir. 2015) ("Just as an at-will employer does not have to hire a given employee, an employer does not have to accept a given employee's rescission [of resignation]."). And Dr. Bennett does not allege TCCD agreed to allow her to rescind her resignation. Instead, she admits TCCD refused to consider her attempt to do so. *Id.* ¶ 5.26. Thus, the Court does not consider Dr. Bennett's conclusory allegation that "she rescinded [her] resignation" and instead interprets the Fourth Amended Complaint as alleging Dr. Bennett attempted to rescind her resignation. *See Hudson v. Mortenson Broad. Co. of Tex.*, 2008 WL 190514, at *1 & n.2 (N.D. Tex. Jan. 23, 2008) (Boyle, J.) (characterizing the plaintiff's email stating "I am rescinding my letter of resignation" as an "attempt[] to rescind [the plaintiff's] resignation").

CRD") and the United States Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 4.45. That same day, her attorney informed TCCD that she was filing a Title VII charge. *Id.* ¶ 4.43. Two weeks later, Dr. Bennett made a "written demand for a due process hearing," which TCCD denied. *Id.* Dr. Bennett's employment with TCCD ended on January 31, 2022. *Id.* ¶ 4.1.

B.    *Procedural Background*

This suit was filed February 7, 2022. *Id.* ¶ 4.46. On March 24, 2022, Dr. Bennett received her Notices of Right to Sue and subsequently filed her First Amended Complaint within ninety days of receiving notice. *Id.* ¶ 4.47. TCCD then moved to dismiss some of Dr. Bennett's claims. Doc. 8, Mot. Dismiss. The Court granted TCCD's motion and dismissed without prejudice Dr. Bennett's claims for (1) sex discrimination under Title VII and the Texas Equal Rights Amendment, (2) age discrimination under the Age Discrimination in Employment Act, (3) retaliation in violation of the First Amendment, (4) breach of contract based on the original contract's notice provision, (5) breach of contract based on the EDP, and (6) violations of her procedural and substantive due process rights. Doc. 19, Mem. Op. & Order, 20. In the Order, the Court gave Dr. Bennett "one chance to amend her pleadings." *Id.*

Dr. Bennett filed her Second Amended Complaint on September 5, 2022. Doc. 20, Second Am. Compl. TCCD filed another motion to dismiss Dr. Bennett's claims. Doc. 21, Mot. Dismiss. The Court dismissed with prejudice Dr. Bennett's claims for (1) discrimination under Title VII, (2) retaliation in violation of her First Amendment free speech rights pursuant to § 1983, (3) violation of her Fourteenth Amendment procedural due process rights pursuant to § 1983, (4) breaches of contract based on (a) her original contract's notice provision and (b) her EDP, and (5) discrimination and retaliation under Title IX. Doc. 34, Mem. Op. & Order, 20. The Court dismissed

without prejudice Dr. Bennett's claims for (1) retaliation under Title VII and (2) breaches of contract based on (a) failing to renew her contract or otherwise discriminating against Dr. Bennett for unlawfully discriminatory reasons, (b) not making a recommendation through the normal administrative channels prior to choosing not to renew her contract, and © failing to renew her contract in retaliation for bringing a complaint against Dr. Giovannini. *Id.* The Court granted "Dr. Bennett a final chance to amend her pleadings on [the claims the Court dismissed without prejudice]." *Id.*

Dr. Bennett filed her Third Amended Complaint (Doc. 37) and roughly a month later filed a Motion for Reconsideration (Doc. 42) of the Court's previous order. Dr. Bennett asked the Court to reconsider its order in light of previously unavailable deposition testimony. Doc. 42, Mot. Reconsider, ¶¶ 7–8. The Court denied the Motion to Reconsider but ultimately granted Dr. Bennett leave to amend her complaint. Doc. 52, Mem. Op. & Order. Dr. Bennett filed her Fourth Amended Complaint (Doc. 53), which TCCD moved to dismiss. Doc. 55, Mot. Dismiss. The Court considers that Motion below.

## II.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "the Court must accept all well-pleaded facts as true, and view them in the light most favorable to the plaintiff." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (alterations and internal quotations

omitted). But the Court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). When well-pleaded facts fail to meet this standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (quotation marks and alterations omitted).

"In deciding a motion to dismiss the court may consider documents attached to or incorporated in the complaint and matters of which judicial notice may be taken." *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 379 (5th Cir. 2003). The Court may consider documents attached to a defendant's motion to dismiss to the extent that those documents are referred to in the complaint and are central to the plaintiff's claims. *Causey v. Sewell Cadillac–Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

## III.

## ANALYSIS

First, the Court addresses Dr. Bennett's Title VII retaliation claim. Dr. Bennett has adequately alleged each element of a Title VII retaliation claim. The Court therefore **DENIES**

TCCD's Motion as to that claim. Next the Court addresses Dr. Bennett's breach-of-contract claims. These claims each fail. Dr. Bennett's claims for breach of contract based on unlawful retaliation and sex discrimination are preempted by Title VII. Her contractual claims for violation of due process and failure to make a recommendation through normal administrative channels fail because these portions of TCCD's policies did not create contractual rights. And her contractual claims for retaliation for protected speech and reprisal for counseling her subordinate fail because Dr. Bennett has not shown that TCCD violated these policies. For these reasons, the Court **GRANTS** the Motion as to Dr. Bennett's breach-of-contract claims.

A.  *Dr. Bennett Has Pleaded a Title VII Retaliation Claim*

Dr. Bennett asserts a claim for retaliation in violation of Title VII. Doc. 53, Fourth Am. Compl., ¶¶ 5.24–5.26. Title VII makes it unlawful for an employer to "discriminate against any of [its] employees . . . because [she] has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). At the motion to dismiss stage, a plaintiff need not submit evidence to establish a prima facie case of retaliation; instead, she must plead sufficient facts on all of the ultimate elements of a retaliation claim to make her case plausible. *See Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016); *accord Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 433 (5th Cir. 2021). But "[i]n that inquiry, it can be helpful to reference the *McDonnell Douglas* framework." *Chhim*, 836 F.3d at 470 (footnote omitted) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). "To establish Title VII retaliation, [Dr. Bennett] must show that 1) she engaged in protected activity, 2) she suffered an adverse employment action, and 3) a causal link exists between the protected activity and

the adverse employment action." *See Wright*, 990 F.3d at 433. TCCD argues Dr. Bennett has not sufficiently alleged any of these elements. Doc. 55, Mot. Dismiss, 13–19. As explained below, the Court disagrees.

### 1. Protected Activity

The Court finds Dr. Bennett has shown that she engaged in a protected activity. "An employee has engaged in activity protected by Title VII if she has either (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996) (quoting 42 U.S.C. § 2000e-3(a)). Dr. Bennett claims that she was retaliated against for three protected activities: (1) filing an internal grievance against Dr. Giovannini on December 2, 2021, (2) filing a Title VII charge against TCCD on December 30, 2021, and (3) participating in two Title VII investigations conducted by TCCD. Doc. 53, Fourth Am. Compl., ¶¶ 5.24–5.26. The Court may consider the grievance and the Title VII charge because they are attached to the Fourth Amended Complaint. *See Willard*, 336 F.3d at 379.

Making a Title VII charge is a protected activity under Title VII. *See Long*, 88 F.3d at 304. Thus, Dr. Bennett's Title VII charge is a protected activity. Her internal grievance, however, is not. To be a protected activity under Title VII, an employee must use their employer's internal grievance mechanisms to oppose an employment practice made unlawful by Title VII. *See id.* at 304, 306 n.5. However, in her grievance, Dr. Bennett does not complain that Dr. Giovannini's conduct constituted an unlawful employment practice under Title VII. *See* Doc. 53-1, Ex. A. Nor does it address conduct made unlawful by Title VII. *See id.* Instead, the grievance alleges Dr. Giovannini retaliated against Dr. Bennett for asking her subordinate to apologize and because Dr. Bennett knew of Dr.

Giovannini's relationship with the subordinate. *See id.* Retaliation on these grounds is not an unlawful employment practice under Title VII.[3]

### 2. Adverse Employment Action

An employer's refusal to accept an employee's attempt to rescind her resignation can amount to an adverse employment action under certain circumstances. *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 947 (5th Cir. 2015). In general, "[j]ust as an at-will employer does not have to hire a given employee, an employer does not have to accept a given employee's rescission." *Id.* However, "[f]ailing to do so in either case *because* the employee has engaged in a protected activity is nonetheless an adverse employment action." *Id.* In deciding whether refusal to accept recission is an adverse employment action, courts consider whether "a reasonable employee in [the employee's] shoes might have legitimately expected that her rescission of resignation would be accepted" prior to engaging in a protected activity. *See id.*; *Bell v. FEUER Powertrain N. Am., Inc.*, 2022 WL 14812685, at *6–7 (N.D. Miss. Oct. 25, 2022).

The Court finds that a reasonable employee in Dr. Bennett's shoes might have legitimately expected her recission of resignation would be accepted. Prior to the incident with Dr. Giovannini, Dr. Bennett had received uniformly positive feedback on her work. Doc. 53, Fourth Am. Compl., ¶ 4.5. Before Dr. Bennett's resignation, TCCD's Associate General Counsel opined that Dr. Bennett

---

[3] Dr. Bennett alleges TCCD believed her grievance was a Title VII complaint. *See* Doc. 53, Fourth Am. Comp., ¶ 4.34 ("TCCD, to the extent it took any action, treated [Dr. Bennett's] grievance as a Title VII Complaint."). Some courts have held an employer's subjective belief that the employee participated in a protected activity can satisfy the first element of a Title VII retaliation claim. *See, e.g.*, *Murphy v. D.C.*, 390 F. Supp. 3d 59, 69 (D.D.C. 2019) (collecting cases). But "the Fifth Circuit has not adopted this perception theory of retaliation," *McKinney v. Bolivar Med. Ctr.*, 341 F. App'x 80, 83 (5th Cir. 2009) (per curiam), and courts in the circuit have generally rejected it, *see id.*; *Boudreau v. Nokia of Am. Corp.*, 2020 WL 7426155, at *7 (N.D. Tex. Dec. 18, 2020) (Brown, J.); *Robertson v. Nat'l Smart Healthcare Servs., Inc.*, 2013 WL 12140299, at *12 (S.D. Tex. Mar. 13, 2013). Because Dr. Bennett does not address the theory in her Response, the Court declines to consider whether to adopt the perception theory of retaliation for the first time in this circuit.

was wrongfully placed on the EDP. *Id.* ¶ 4.26. And most significantly, multiple people with influence at TCCD indicated their support for Dr. Bennett between her resignation on November 15, 2021, and her Title VII charge on December 30, 2021. *Id.* ¶¶ 4.33, 4.41. In late November, a TCCD Board member told Dr. Bennett he supported her filing an internal grievance against Dr. Giovannini and would talk to other Board members about it. *Id.* ¶ 4.33. And in early December, TCCD's Human Resources Director informed her, "[Y]ou've done nothing wrong, and we are doing an independent third-party investigation of the matters in your grievance." *Id.* ¶ 4.41. These facts, taken together and viewed in the light most favorable to Dr. Bennett, indicate Dr. Bennett could have reasonably believed that her recission would be accepted. *See Porter*, 810 F.3d at 947.

    3.    <u>Causation</u>

These facts also support finding a causal link between Dr. Bennett's protected activity—filing a Title VII charge—and TCCD's refusal to accept her recission. At this stage, Dr. Bennett must plead facts permitting a reasonable inference that TCCD terminated her because she filed her Title VII charge. *See Wright*, 990 F.3d at 433. "In this Circuit, temporal proximity between protected activity and alleged retaliation is sometimes enough to establish causation at the prima facie stage." *Porter*, 810 F.3d at 948.

As discussed above, Dr. Bennett attempted to rescind her resignation on December 2, 2021. Doc. 53, Fourth Am. Compl., ¶ 4.34. Before Dr. Bennett filed her Title VII charge, various TCCD stakeholders, including the Human Resources Director, told Dr. Bennett that she had done nothing wrong. *See id.* ¶¶ 4.26, 4.33, 4.41. But on December 30, 2021, Dr. Bennett filed her Title VII charge and notified TCCD that she was doing so. *Id.* ¶ 4.43. Roughly one month later, Dr. Bennett's employment was terminated, effectively rejecting her recission attempt. *Id.* ¶ 4.1. This close temporal

proximity alone supports a causal link. *See Porter*, 810 F.3d at 949 (finding a six-and-a-half-week gap between the protected act and the adverse employment action sufficient to show a prima facie case of causation). So too does her disciplinary record. Doc. 53, Fourth Am. Compl., ¶ 4.5. And the statements of TCCD stakeholders, while not direct evidence, at least suggest a departure from typical policy and procedure. The Court therefore concludes Dr. Bennett has plausibly pleaded causation.

The Court therefore finds Dr. Bennett has pleaded sufficient facts on all of the ultimate elements of a retaliation claim to make her case plausible. *See Chhim*, 836 F.3d at 470. She participated in a protected activity by filing a Title VII charge. She suffered an adverse employment action when TCCD refused to allow her to rescind her resignation. And the temporal proximity between the two supports a causal link. The Court therefore **DENIES** TCCD's Motion as to Dr. Bennett's Title VII retaliation claim.

B.    *Breach-of-Contract Claims*

A plaintiff seeking to recover on a breach-of-contract claim must show "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (quoting *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)). Dr. Bennett alleges TCCD breached the parties' original written employment contract and the EDP contract[4] by violating various TCCD

---

[4] As noted above, the Court can review documents attached to a defendant's motion to dismiss to the extent that those documents are referred to in the complaint and are central to the plaintiff's claims. *Causey*, 394 F.3d at 288. Here, the Court analyzes Dr. Bennett's breach-of-contract claims by reference to her original contract and the EDP, both attached to TCCD's Motion to Dismiss, since both were referenced in Dr. Bennett's complaint and are central to her claims. *See* Doc. 53, Fourth Am. Compl., ¶¶ 5.1–5.26.

employment policies that were incorporated into the contracts. Doc. 53, Fourth Am. Compl., ¶¶ 5.1–5.26.

Some of these contractual claims are somewhat unusual. Dr. Bennett essentially argues that the employment policies created contractual rights that mirror certain constitutional or statutory protections, including the First Amendment and Title VII. *See, e.g.*, Doc. 53, Fourth Am. Compl., ¶ 5.4 (alleging a contractual right to freedom from unlawful discrimination). Thus, to analyze these claims, the Court must address (1) whether the policies created such contractual rights and (2) if so, whether these contractual rights were violated.

Texas presumes employment is at-will. *Montgomery Cnty. Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998). "[E]mployee handbooks or manuals generally do not alter the at-will employment relationship . . . ." *In re Sun Coast Res., Inc.*, 562 S.W.3d 138, 159 (Tex. App.—Houston [14th Dist.] 2018, no pet.). "Nonetheless, Texas courts have recognized that employment policies may, in limited circumstances, alter the at-will nature of the employment and create enforceable contractual rights." *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 862 (5th Cir. 1999).

"An employee handbook . . . does not create property interests in stated benefits and policies unless some specific agreement, statute, or rule creates such an interest." *Parviz-Khyavi v. Alcon Lab'ys, Inc.*, 395 S.W.3d 376, 382 (Tex. App.—Dallas 2013, pet. denied) (internal quotations omitted). "[A]bsent any express reciprocal agreement regarding discharge, [government] personnel policies or employee handbooks constitute no more than general guidelines and do not create contractual rights in employees." *See Heggemeier v. Caldwell Cnty.*, 826 F.3d 861, 871 (5th Cir. 2016) (internal quotations omitted).

"To create contractual rights, [an employment] policy must specifically and expressly limit the employer's ability to terminate the employee." *Zenor*, 176 F.3d at 862 (citing *Vida v. El Paso Emps.' Federal Credit Union*, 885 S.W.2d 177, 182 (Tex. App.—El Paso 1994, no writ)). "The policy must contain an explicit contractual term altering the at-will relationship, and must alter that relationship 'in a meaningful and special way.'" *Id.* (quoting *Figueroa v. West*, 902 S.W.2d 701, 705, (Tex. App.—El Paso 1995, no writ)). Provisions of a policy manual "merely explain[ing] the termination procedure[s] that the supervisor should employ" do not modify at-will employment status. *See Williams v. First Tenn. Nat. Corp.*, 97 S.W.3d 798, 803 (Tex. App.—Dallas 2003, no pet.).

The Court therefore considers whether (1) there is an "express reciprocal agreement" regarding the policies, *see Heggemeier*, 826 F.3d at 871, and (2) the policy "specifically and expressly limit[s] [TCCD's] ability to terminate [Dr. Bennett]" and "contain[s] an explicit contractual term altering the at-will relationship . . . in a meaningful and special way," *see Zenor*, 176 F.3d at 862. If so, the policy creates a contractual right.

Dr. Bennett contends TCCD breached two separate contracts: (1) the original written employment contract that expired on August 31, 2021, and (2) the EDP Dr. Bennett was placed on starting September 1, 2021. Doc. 53, Fourth Am. Compl., ¶ 5.1. As explained above, the Court may consider Dr. Bennett's original employment contract, which is attached to the Motion to Dismiss. The contract states, "[Y]ou agree . . . to abide by and be governed by the policies and regulations of [TCCD]. You will be entitled to all appropriate benefits as provided by the policies of [TCCD]." Doc. 55-1, Mot. Dismiss Ex. A. Thus, both parties are bound by TCCD's policies. The Court finds this contractual language is an express reciprocal agreement altering Dr. Bennett's at-will employment. Regarding the EDP, Dr. Bennett alleges "th[is] contract[] included the policies of TCCD. The

policies of TCCD were a part of the contract[]." *See* Doc. 53, Fourth Am. Compl., ¶ 5.2. This conclusory allegation is insufficient to allege an "express reciprocal agreement regarding discharge." *See Heggemeier*, 826 F.3d at 871. Without more, Dr. Bennett cannot "overcome the strong presumption of at-will employment under Texas law." *See id.* at 872.

The Court will therefore consider only Dr. Bennett's claims for breach of her original contract. The Court next considers if the employment policies "specifically and expressly limit [TCCD's] ability to terminate [Dr. Bennett]" and "contain an explicit contractual term altering the at-will relationship . . . in a meaningful and special way." *Zenor*, 176 F.3d at 862.

    1.    <u>Breach of Contract for Sex Discrimination and Retaliation</u>

TCCD argues, "[Dr. Bennett's] breach of contract claims of discrimination and/or retaliation based on the same factual basis supporting her Title VII claims should be dismissed because Title VII and/or the [Texas Commission on Human Rights Act] is the exclusive remedy for these claims." Doc. 55, Mot. Dismiss, 7. In federally funded educational institutions Title VII provides the exclusive remedy for claims of employment discrimination on the basis of sex, *Lakoski v. James*, 66 F.3d 751, 753 (5th Cir. 1995), and for retaliation against conduct protected by Title VII, *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 248 (5th Cir. 1997). Where Title VII provides an exclusive remedy for employment discrimination, state-law claims based in employment discrimination are barred. *See, e.g., Hampton v. I.R.S.*, 913 F.2d 180, 182–83 (5th Cir. 1990) (per curiam) (holding a state-law tort claim based on conduct made unlawful by Title VII was preempted by Title VII); *Hollimon v. Potter*, 2009 WL 1975430, at *2 (S.D. Miss. July 7, 2009) (holding a breach of contract claim based on conduct made unlawful by Title VII was preempted by Title VII). Thus, Dr. Bennett's breach of

contract claims based on sex discrimination or retaliation made unlawful by Title VII[5] are **DISMISSED WITH PREJUDICE**.

2. Breach of Contract for Failure to Make a Recommendation

Second, TCCD argues its policies did not require TCCD to make a recommendation of non-renewal through normal administrative channels before terminating Dr. Bennett's employment. Doc. 55, Mot. Dismiss, 8–9. Even if the policies require this recommendation, the policy provisions "merely explain[] the termination procedure[s] that the supervisor should employ" and thus did not create a contractual right. *See Williams*, 97 S.W.3d at 803. Thus, Dr. Bennett's claim based on TCCD choosing not to renew her contract without a recommendation through normal channels is **DISMISSED WITH PREJUDICE**.

3. Breach of Contract for Retaliation for Protected Speech

Dr. Bennett alleges that TCCD's policies created a contractual right to freedom of speech. The policies provide, in relevant part, "Proposed nonrenewal shall not be based on an employee's exercise of rights guaranteed by the Constitution." Doc. 53, Fourth Am. Compl., ¶ 5.11. The Court understands Dr. Bennett to be alleging that her employment contract creates a contractual right that mirrors her First Amendment rights. To the extent she is arguing that the contract creates some other free speech right, that right is too nebulous to be enforceable. The Court therefore analyzes (1) whether the policies created a contractual right to free speech that mirrors the First Amendment and (2) whether Dr. Bennett has pleaded a First Amendment violation.

To plead a First Amendment retaliation claim, Dr. Bennett must plead "facts showing (1)

---

[5] As explained in Section III.A.1, *supra*, Dr. Bennett's internal grievance is not conduct protected by Title VII. Thus, to the extent Dr. Bennett's breach of contract for retaliation claim is based on this grievance, it is not preempted by Title VII.

that the employee's speech involved a matter of public concern, (2) that the employee suffered an adverse employment action for exercising her First Amendment rights, and (3) that the employee's exercise of free speech was a substantial or motivating factor in the adverse employment action." *Benningfield v. City of Hous.*, 157 F.3d 369, 375 (5th Cir. 1998). Assuming without deciding that TCCD's policies created a contractual right to freedom from retaliation for protected speech, the Court finds Dr. Bennett has not pleaded a violation of that right.

Dr. Bennett alleges she "exercised her protected right to free speech by filing a grievance against Dr. Giovannini, and also by speaking to Carol Bracken, and the director of TCCD's human resources department, and the former board member, regarding her treatment and the Chancellor's actions." Doc. 53, Fourth Am. Compl., ¶ 5.11. However, Dr. Bennett's conversation with Carol Bracken occurred more than a month after Dr. Bennett's original contract expired, and she filed her grievance three months after. *See id.* ¶¶ 4.22, 4.34. At the time of this speech, Dr. Bennett's operative employment contract was her EDP. Thus, the Court finds Dr. Bennett cannot state a claim for breach of her original contract for retaliation for protected speech. This claim is **DISMISSED WITH PREJUDICE**.

### 4. Breach of Contract for Reprisal for Counseling Her Subordinate

Dr. Bennett renews her claim that TCCD violated its "Freedom from Reprisals" policy by withholding renewal of her contract. *See id.* ¶ 5.14. The "Freedom from Reprisals" paragraph of the policy states, "No reprisals or retaliation of any kind shall be taken at any level against an employee for bringing a complaint." *Id.* Assuming without deciding that TCCD's policies created a contractual right to freedom from reprisal for bringing a complaint, the Court finds Dr. Bennett has not pleaded a violation of this contractual right.

As the Court previously explained,

> [TCCD's policies] define[] a complaint "as an unresolved issue concerning the application of College District policy, practice, or regulation [including] disciplinary action." To bring a complaint, an employee first raises the issue with their immediate supervisor and then proceeds up the line of authority if the matter remains unresolved. Dr. Bennett's "actions to counsel her female subordinate" were not "bringing a complaint" within the meaning of [TCCD's policies]. The discussion did not concern "an unresolved issue concerning the application of College District policy, practice, or regulation," and Dr. Bennett did not follow the procedures for bringing a complaint.

Doc. 34, Mem. Op. & Order, 17–18 (internal citations omitted). Dr. Bennett has not pleaded any additional facts to disturb this conclusion. The Court therefore again finds that Dr. Bennett has not stated a claim for breach of contract based on the "Freedom from Reprisals" policy. Thus, Dr. Bennett's contractual claim against TCCD for choosing not to renew her contract in retaliation for disciplining her subordinate is **DISMISSED WITH PREJUDICE**.

### 5. Breach of Contract for Due Process Violation

Dr. Bennett claims that TCCD breached the parties' original contract by failing to use progressive discipline or warnings and denying her a due process hearing. Doc. 53, Fourth Am. Compl., ¶¶ 5.17–5.20. Dr. Bennett cites TCCD's policies, which provide, "In order to express the affirmation of [TCCD's] professional responsibilities more adequately, the employees of the college district, with the full support of the board, do adopt and hold ourselves and each other subject to the following Code of Professional Ethics: . . . Support the right of due process for all." *Id.* ¶ 5.19.

As explained above, when an employment policy "specifically and expressly limit[s] the employer's ability to terminate the employee" and "contain[s] an explicit contractual term altering the at-will relationship . . . in a meaningful and special way," the policy creates an enforceable contract right. *Zenor*, 176 F.3d at 862. For example, in *Vida*, the court found the policy provision

"[n]o employee shall be penalized for using the grievance procedure" altered the at-will relationship. 885 S.W.2d at 181. The court reasoned,

> Although the at-will doctrine still governed the relationship between plaintiff and defendant in most areas, the employer made a specific pledge that it would not terminate (or otherwise retaliate against) an employee for a single, particular reason. We believe the assurance in this employee handbook meets the test of a specific, express limitation that alters the at-will relationship in a meaningful way.

*Id.*

The Court finds the cited portion of TCCD's policies does not "specifically and expressly limit [TCCD's] ability to terminate the employee." *See Zenor*, 176 F.3d at 862. In addition, as explained above in Section III.B.1–III.B.4, *supra*, Dr. Bennett has not adequately pleaded that TCCD has deprived her of any contractual right. For this independent reason, Dr. Bennett's contractual due process claim fails. The Court therefore **DISMISSES WITH PREJUDICE** Dr. Bennett's contractual due process claim.

C.    *Leave to Amend*

"[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). But the liberal standard for leave to amend a complaint under Rule 15(a) is "tempered by the necessary power of a district court to manage a case." *See* Fed. R. Civ. P. 15(a); *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003).

In its previous Order, "the Court deem[ed] it appropriate to provide Dr. Bennett a final chance to amend her pleadings on her remaining claims." Doc. 34, Mem. Op. & Order, 20. Before

the Court is Dr. Bennett's Fourth Amended Complaint. The Court finds granting Dr. Bennett leave to amend these claims in a fifth amended complaint would be futile. Thus, Dr. Bennett's breach of contract claims are **DISMISSED WITH PREJUDICE**.

### IV.

### CONCLUSION

Because Dr. Bennett has stated a claim for retaliation under Title VII, the Court **GRANTS in part** and **DENIES in part** TCCD's Motion to Dismiss (Doc. 55). The Court **DISMISSES WITH PREJUDICE** Dr. Bennett's claims for breach of contract.

**SO ORDERED**.

**SIGNED: July 5, 2023**.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE