UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DR. KRISTEN BENNETT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:22-CV-0289-B |
| | § | |
| TARRANT COUNTY COLLEGE DISTRICT, | § | |
| | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Tarrant County College District ("TCCD")'s Motion for Summary Judgment (Doc. 63). For the reasons explained below, the Court **DENIES** the Motion for Summary Judgment (Doc. 63). The Court also **OVERRULES** the first objection Plaintiff Dr. Bennett raised in the brief supporting her response and need not decide her second objection (Doc. 70).

I.

BACKGROUND

A.   *Factual Background*[1]

This is a Title VII retaliation case arising out of Dr. Bennett's employment with TCCD. TCCD is a community college district that operates a system of community college campuses in and around Tarrant County. Doc. 65, Def.'s App., 1, ¶ 4. From October 1, 2020, to January 31, 2022,

---

[1] Although "pleadings are not summary judgment evidence," *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996), the Court refers to facts alleged in Dr. Bennett's Fourth Amended Complaint (Doc. 53) to provide context for the facts supporting summary judgment.

Dr. Bennett worked for TCCD as its Executive Vice President for Advancement. Doc. 65, Def.'s App., 4; Doc. 71, Pl.'s App., 3, ¶ 2. Under the parties' original employment contract, Dr. Bennett's term of employment was from October 1, 2020, to August 31, 2021. Doc. 65, Def.'s App., 4. Dr. Bennett's supervisor during this time was the chancellor of TCCD, Dr. Eugene Giovannini. Doc. 71, Pl.'s App., 3, ¶ 2.

On July 13, 2021, one of Dr. Bennett's subordinates had a workplace conflict with one of Dr. Bennett's colleagues. Doc. 71, Pl.'s App., 8–9; Doc. 65, Def.'s App., 14–15. Dr. Bennett asked the subordinate to apologize to her colleague. *Id.*

On August 17, 2021, Dr. Giovannini summoned Dr. Bennett to his office. Doc. 71, Pl.'s App., 7. The two met again on August 30, 2021, at which time Dr. Giovannini informed Dr. Bennett that he was placing her on an executive development plan ("EDP"), which is the equivalent of a personal improvement plan. *Id.* at 20. Dr. Giovannini later gave Dr. Bennett a copy of the EDP, notifying her that she would be on the EDP until December 31, 2021. Doc. 65, Def.'s App., 7–9. Additionally, he informed her that her contract was not being renewed and that she would be required to meet with Dr. Giovannini every two weeks. Doc. 71, Pl's App., 20.

On October 28, 2021, TCCD's Associate General Counsel, Carol Bracken, told Dr. Bennett that Dr. Giovannini was rumored to be having an inappropriate relationship with the same subordinate that Dr. Bennett disciplined following the conflict on July 13, 2021. *Id.*

On November 15, 2021, Dr. Bennett resigned from her position, stating that her last day would be January 31, 2022. Doc. 71, Pl.'s App., 27; Doc. 65, Def.'s App., 11. After resigning, the head of the TCCD Foundation Board—Karen Thornton—encouraged Dr. Bennett to rescind her resignation. Doc. 71, Pl.'s App., 4, ¶ 6. Additionally, two other TCCD Foundation Board members

told her "they would not let this happen." *Id.* at 4, ¶ 9 (internal quotations omitted). Ultimately, on December 2, 2021, Dr. Bennett attempted to rescind her resignation and filed an internal grievance against Dr. Giovannini. Doc. 71, Pl.'s App., 27; Doc. 65, Def.'s App., 14–16. In the grievance, Dr. Bennett alleged that Dr. Giovannini was having an inappropriate relationship with a subordinate. Doc. 71, Pl.'s App., 7; Doc. 65, Def.'s App., 14. Dr. Bennett alleged that Dr. Giovannini was mistreating her because Dr. Bennett asked her subordinate to apologize to a colleague. Doc. 71, Pl.'s App., 7–9; Doc. 65, Def.'s App., 14–16. Dr. Bennett claimed his actions created a hostile work environment and constituted an abuse of power. *Id.* After filing her grievance, another TCCD Foundation Board Member—Conrad Heede—told Dr. Bennett that Teresa Ayle and Ken Barr, who were members of both the TCCD Foundation Board and TCCD Board, wanted to help Dr. Bennett. Doc. 71, Pl.'s App., 4, ¶ 9.

Shortly thereafter, TCCD placed Dr. Bennett on paid leave and prohibited her from entering campus. Doc. 71, Pl.'s App., 20–21; Doc. 65, Def.'s App., 18. Dr. Bennett claims that Gloria Powell, TCCD's Chief of Human Resources, told Dr. Bennett "[she] had done nothing wrong" when notifying her she was being placed on leave. Doc. 71, Pl.'s App., 4, ¶ 10. On December 30, 2021, Dr. Bennett submitted complaints of discrimination and retaliation to the Texas Workforce Commission Civil Rights Division ("TWC-CRD") and the United States Equal Employment Opportunity Commission ("EEOC"). *Id.* at 19, 24. That same day, her attorney informed TCCD that she was filing a Title VII charge. *Id.* at 17–18. Two weeks later, Dr. Bennett made a "written demand for a due process hearing," which she never received. *Id.* at 22. Dr. Bennett's employment with TCCD ended on January 31, 2022. *Id.* at 6, ¶ 22.

B.  *Procedural Background*

This suit was filed February 7, 2022. Doc. 53, Fourth Am. Compl., ¶ 4.46. On March 24, 2022, Dr. Bennett received her Notices of Right to Sue and subsequently filed her First Amended Complaint within ninety days of receiving notice. *Id.* ¶ 4.47. TCCD then moved to dismiss some of Dr. Bennett's claims. Doc. 8, Mot. Dismiss. The Court granted TCCD's motion and dismissed without prejudice six of Dr. Bennett's claims. Doc. 19, Mem. Op. & Order, 20.

Dr. Bennett filed her Second Amended Complaint on September 5, 2022. Doc. 20, Second Am. Compl. TCCD filed another motion to dismiss Dr. Bennett's claims. Doc. 21, Mot. Dismiss. The Court dismissed some of Dr. Bennett's claims with prejudice and some of her claims without prejudice. Doc. 34, Mem. Op. & Order, 20.

Dr. Bennett filed her Third Amended Complaint on February 28, 2023 (Doc. 37). Roughly a month later, she filed a Motion for Reconsideration of the Court's previous order, asking the Court to reconsider its dismissal of certain claims in light of previously unavailable deposition testimony. Doc. 42, Mot. Reconsider. The Court denied the Motion to Reconsider but ultimately granted Dr. Bennett leave to amend her complaint. Doc. 52, Mem. Op. & Order. Dr. Bennett filed her Fourth Amended Complaint (Doc. 53), which TCCD moved to dismiss. Doc. 55, Mot. Dismiss. The Court granted that motion in part and denied it in part, leaving Dr. Bennett with only her Title VII retaliation claim. Doc. 62, Mem. Op. & Order. TCCD then filed its Amended Motion for Summary Judgment (Doc. 63–65), which the Court considers below.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a). The summary-judgment movant bears the burden of proving that no genuine issue of material fact exists. *Latimer v. Smithkline & French Lab'ys*, 919 F.2d 301, 303 (5th Cir. 1990). The substantive law governing a matter determines which facts are material to a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Usually, the movant must identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotation omitted). However, "[i]f the burden at trial rests on the non-movant, the movant must merely demonstrate an absence of evidentiary support in the record for the non-movant's case." *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000) (citing *Celotex*, 477 U.S. at 322).

Once the movant satisfies this burden, the burden shifts to the non-movant to "go beyond the pleadings and designate specific facts" showing that a genuine issue exists. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Id.* (quotations omitted). Instead, the non-moving party must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis and quotation omitted).

"[C]ourts are required to view the facts and draw reasonable inferences in the light most favorable to the [non-movant]." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted). But the Court need not "sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (quotation

omitted). If the non-movant is unable to make the required showing, the Court must grant summary judgment. *Little*, 37 F.3d at 1076.

## III.

## OBJECTIONS

As a preliminary matter, the Court addresses the objections raised in Dr. Bennett's Response to the Motion for Summary Judgment (Doc. 70). Dr. Bennett raised two sets of objections in her response: (1) that TCCD filed a second motion for summary judgment, in violation of the Local Rules of the Northern District of Texas; and (2) that portions of TCCD's appendix were inadmissible. Doc. 70, Resp. Br. Summ. J., 3–5. The Court overrules the first objection and need not decide the second objection.

First, the Court overrules Dr. Bennett's objection that TCCD impermissibly filed a second motion for summary judgment. Local Rule 56.2(b) states "[u]nless otherwise directed by the presiding judge . . . part[ies] may file no more than one motion for summary judgment." Local Rule 56.2(b) largely exists "to regulate successive motions that are filed after the court has devoted time and effort to deciding an initial motion . . . but as to which the movant seeks a second bite at the apple." *Moore v. City of Rowlett*, No. 3:10-CV-73-F, 2011 WL 13232698, at *1 (N.D. Tex. Jan. 13, 2011) (Furgeson, J.) (quotation omitted). This Court denied TCCD's first motion for summary judgment as moot because the Court gave Dr. Bennett leave to file a third amended complaint—meaning the Court never considered the merits of TCCD's initial motion for summary judgment. Doc. 34, Mem. Op. and Order; *see* Doc. 35, Order. TCCD, therefore, is not seeking a second bite at the apple—it simply wants the Court to address the merits of its Motion for Summary Judgment for the first time. Dr. Bennett is not entitled to receive the benefit of the Court's leave to

-6-

amend her complaint for a third and fourth time while simultaneously seeking to prevent the Court from considering the merits of TCCD's Amended Motion for Summary Judgment. Therefore, the Court overrules this objection.

Second, the Court need not decide Dr. Bennett's evidentiary objections regarding several documents in TCCD's Appendix. In TCCD's Reply, TCCD withdrew its arguments pertaining to "after-acquired evidence" for the purposes of summary judgment. Doc. 76, Def.'s Reply, 2. Because the evidence Dr. Bennett objected to only implicated the arguments pertaining to so-called "after-acquired evidence," the Court need not decide these objections to determine the outcome of this Motion. *See* Doc. 70, Resp. Br. Summ. J., 3–5.

## IV.

## ANALYSIS

For a Title VII retaliation claim, the Fifth Circuit uses the *McDonnell Douglas* burden-shifting framework. *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 219 (5th Cir. 2016). This framework has a three-step process. The plaintiff has the initial burden of establishing their prima facie case. *Id.* The burden then shifts to the defendant to provide a legitimate, non-retaliatory reason for the adverse employment action. *Id.* Then, the "ultimate burden" returns to the plaintiff to "produce substantial evidence" that the proffered legitimate reason was pretextual. *Id.* at 216 (quoting *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 233 (5th Cir. 2015)). Here, the Court concludes that Dr. Bennett has established her prima facie case and that there is a genuine issue of material regarding pretext.

A.   *Prima Facie Case*

Dr. Bennett asserts a claim for retaliation in violation of Title VII. Doc. 53, Fourth Am. Compl., ¶¶ 5.24–5.26. Title VII makes it unlawful for an employer to "discriminate against any of

[its] employees . . . because [she] has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). "To establish Title VII retaliation, [Dr. Bennett] must show that 1) she engaged in protected activity, 2) she suffered an adverse employment action, and 3) a causal link exists between the protected activity and the adverse employment action." *See Outley*, 840 F.3d at 219. TCCD argues Dr. Bennett has not established that she suffered an adverse employment action or that a causal link exists between the protected activity and any adverse employment action. Doc. 64, Br. Summ. J., 4. As explained below, the Court disagrees.

### 1. Protected Activity

The Court previously found that Dr. Bennett engaged in protected activity by filing a Title VII charge with the EEOC against TCCD on December 30, 2021. Doc. 62, Mem. Op. & Order, 8; *see also Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996) (holding that filing a Title VII charge is a protected activity). Therefore, Dr. Bennett has established the protected activity element of her prima facie case.

### 2. Adverse Employment Action

The Court also finds that Dr. Bennett suffered an adverse employment action. An employer's refusal to accept an employee's attempt to rescind her resignation can amount to an adverse employment action under certain circumstances. *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 947 (5th Cir. 2015). In general, "[j]ust as an at-will employer does not have to hire a given employee, an employer does not have to accept a given employee's rescission." *Id.*

However, "[f]ailing to do so in either case *because* the employee has engaged in a protected activity is nonetheless an adverse employment action." *Id.*

In deciding whether refusal to accept rescission is an adverse employment action, courts consider whether "a reasonable employee in [the employee's] shoes might have legitimately expected that her rescission of resignation would be accepted" prior to engaging in the protected activity. *See id.*; *Bell v. FEUER Powertrain N. Am., Inc.*, 2022 WL 14812685, at *6–7 (N.D. Miss. Oct. 25, 2022) (finding that a reasonable person in the plaintiff's shoes may have reasonably expected his rescission would be accepted).

In *Porter*, both the plaintiff's direct supervisor and the chairman of her employer's board asked the plaintiff to rescind her resignation. *Porter*, 810 F.3d at 947. Even though neither her direct supervisor nor the chairman of the board "had authority to make the decision itself," the Court found that their requests could have helped contribute to a reasonable belief that the plaintiff could rescind her resignation. *Id.* The plaintiff's employer also granted her request to delay her resignation date for a month, and the plaintiff identified four employees who had previously been allowed to rescind prior resignations. *Id.* at 947–48.

Similarly, in *Bell*, the court found there was a genuine issue of material fact whether the plaintiff had a legitimate expectation that his employer would accept his attempt to rescind his resignation. *Bell*, 2022 WL 14812685 at *7. After the plaintiff submitted his letter of resignation, his human resources director asked the plaintiff to reconsider resigning. *Id.* The plaintiff eventually requested to rescind his resignation—his human resources director immediately tore up the initial letter of resignation. *Id.* The human resources director, however, did not have final authority to

reinstate the plaintiff. *Id.* But the CEO of the company, who did have the ultimate authority, had also made statements suggesting the CEO "would accept [plaintiff's] recission."

The facts here establish a genuine issue of material fact that Dr. Bennett could have reasonably believed that her request to rescind would be accepted. *See Porter*, 810 F.3d at 947. Prior to the incident with Dr. Giovannini, Dr. Bennett had received uniformly positive feedback on her work. Doc. 71, Pl.'s App., 3, ¶ 2. More significantly, multiple people with at least some influence at TCCD—i.e., various members of the TCCD Foundation Board—indicated their support for Dr. Bennett between her resignation on November 15, 2021, and her Title VII charge on December 30, 2021. *Id.* at 4, ¶¶ 6–7, 9. In early December, a TCCD Foundation Board member told Dr. Bennett that he and two other TCCD Foundation Board members wanted to help her. *Id.* at 4, ¶ 9. A total of six TCCD Foundation Board members (two of which were also members of TCCD's Board) expressed their support for Dr. Bennett and indicated that they would be willing to help her in the following weeks. *Id.* at 4, ¶¶ 6–7, 9. Finally, in early December, when Dr. Bennett was placed on leave, TCCD's Chief of Human Resources assured Dr. Bennett that she had done nothing wrong and that TCCD was conducting a third-party investigation into Dr. Bennett's grievance. *Id.* at 4, ¶ 10. Therefore, there is a genuine issue of fact regarding whether a reasonable employee would have expected her rescission to be accepted.

TCCD attempts to distinguish the facts here from *Porter* and *Bell*. Doc. 76, Def.'s Reply, 4. But there are several similarities between those cases and this case indicating that Dr. Bennett had a reasonable expectation that her request to rescind her resignation would be accepted. Like the plaintiff in *Porter*, Dr. Bennett received support from several of her employer's board members, who held influence at the institution. *See* Doc. 71, Pl.'s App., 4, ¶¶ 6–7, 9. In fact, the chair of the TCCD

Foundation Board, Karen Thornton, was the person who first encouraged Dr. Bennett to rescind her resignation. *Id.* at 4, ¶ 6. Thornton had also been an HR professional "for decades," which supports the reasonableness of Dr. Bennett's belief that her rescission would be accepted. *See id.*

TCCD also attempts to distinguish *Bell* from Dr. Bennett's case because Dr. Bennett never received support from the person who had the ultimate authority to accept her request to rescind—Dr. Giovannini. Doc. 76, Def.'s Reply, 4. But she has attested to receiving support from TCCD Foundation Board members and of being told by TCCD's Chief of Human Resources that she did nothing wrong. *Id.* at 4, ¶¶ 6–7, 9–10. TCCD offers no evidence to dispute that Dr. Bennett received such support from its Foundation Board members or that its Chief of Human Resources told Dr. Bennett she did nothing wrong. Instead, TCCD argues the Foundation Board members "have no say in the policies and procedures of TCCD" and their support "has no bearing on [Dr. Bennett's] legitimate expectation of success in her resignation rescission attempt." Doc. 76, Def.'s Reply, 5. TCCD argues this means that "none of these interactions affect Plaintiff's objective legitimate expectation that her resignation rescission would be accepted." *Id.* at 5. While it is true that none of these individuals had the ultimate authority to accept Dr. Bennett's request or to reinstate her, many of the interactions in *Bell* that the court relied upon to determine the plaintiff had such a reasonable expectation involved individuals who did not have the authority to reinstate the plaintiff. *See Bell*, 2022 WL 14812685, at *7. Similarly, the Fifth Circuit in *Porter* held that requests to rescind from supervisors without the authority to reinstate the plaintiff "may have contributed to a reasonable belief that Porter was at liberty to rescind." *Porter*, 810 F.3d at 947. Therefore, especially considered in the light most favorable to Dr. Bennett, the representations made to her could affect a reasonable employee's expectation that their resignation rescission would be accepted.

The most helpful distinction for TCCD is that unlike in *Bell* and *Porter*, Dr. Bennett is unable to produce an example of a previous TCCD employee who was allowed to rescind their resignation. *See Bell*, 2022 WL 14812685, at *6 ("[plaintiff] was aware that an employee had been allowed to rescind her resignation in October 2019"); *see Porter*, 810 F.3d at 947–48 (observing that four employees had previously been allowed to rescind their resignation). However, this distinction is insufficient to show, as a matter of law, that Dr. Bennett had no legitimate expectation that her request to rescind her resignation would be accepted when considering the other evidence offered by Dr. Bennett. Therefore, Dr. Bennett has established the adverse employment action for her prima facie case.

### 3.   Causation

These facts also support finding a causal link between Dr. Bennett's protected activity—filing a Title VII charge—and TCCD's refusal to accept her rescission. "In this Circuit, temporal proximity between protected activity and alleged retaliation is sometimes enough to establish causation at the prima facie stage." *Porter*, 810 F.3d at 948 (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (temporal proximity must be "very close" for timing alone to be sufficient evidence of causation at the prima facie stage). The Fifth Circuit has found a temporal proximity of six and a half weeks to be sufficiently close to establish a prima facie case of retaliation. *Id.* at 949; *see also Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994–95 (5th Cir. 2005) (concluding that two months "would have been sufficient" to establish causation for the prima facie case).

As discussed above, Dr. Bennett attempted to rescind her resignation on December 2, 2021. Doc. 71, Pl.'s App., 9, 13. Then on December 9th, Dr. Bennett was placed on paid leave pending the results of the investigation into her grievance. *Id.* at 11, 20–21; Doc. 65, Def.'s App., 18. Before Dr.

-12-

Bennett filed her Title VII charge on December 30th, various TCCD stakeholders, including the Chief of Human Resources, told Dr. Bennett that she had done nothing wrong and indicated they supported her. *See* Doc. 71, Pl.'s App., 4, ¶¶ 6–7, 9–10.

The parties dispute when TCCD denied Dr. Bennett's request to rescind her resignation. TCCD argued that placing Dr. Bennett on paid leave on December 9th served as "effectively reject[ing] Plaintiff's request to rescind her resignation." Doc. 64, Def.'s Br. Summ. J., 13. In contrast, Dr. Bennett argues her request was not effectively denied until her employment was terminated on January 31, 2022. Doc. 70, Resp. Br. Summ. J., 13. She further argues that there is, at the very least, a genuine issue of material fact regarding when TCCD denied her request to rescind her resignation. *Id.* at 7. TCCD never expressly rejected her request to rescind her resignation. *See* Doc. 64, Def.'s Br. Summ. J., 13–14.; *see* Doc. 70, Resp. Br. Summ. J., 13. However, Gloria Powell's emails to Dr. Bennett in early January 2022, reiterating that TCCD included Dr. Bennett's request to rescind her resignation in the third-party investigation, suggest that TCCD had not made any final decision regarding Dr. Bennett's request before she filed the Title VII charge on December 30th. *See* Doc. 70, Pl.'s App., 13. Therefore, there is a genuine issue of material fact regarding when TCCD denied Dr. Bennett's request to rescind her resignation.

If TCCD established, as a matter of law, that it denied Dr. Bennett's request before she filed the Title VII charge, then Dr. Bennett could not prove the causation element of her prima facie case. However, because there is a genuine dispute of material fact regarding when TCCD denied her request, the Court, viewing the facts in the most favorable light to Dr. Bennett, determines whether Dr. Bennett would establish the causation element assuming TCCD rejected her request on January 31, 2022. The date offered by Dr. Bennett presents a roughly one-month period between the

protected activity and the adverse employment action. This is sufficiently close in time to alone support a causal link at the prima facie stage. *See Porter*, 810 F.3d at 949 (finding a six-and-a-half-week gap between the protected act and the adverse employment action sufficient to show a prima facie case of causation).

The Court therefore finds Dr. Bennett has provided sufficient evidence on each element of her retaliation claim to make a prima facie case. *See Outley*, 840 F.3d at 219. She participated in a protected activity by filing a Title VII charge. She suffered an adverse employment action when TCCD refused to allow her to rescind her resignation. And the temporal proximity between the two events supports a causal link.

B.   *Legitimate, Non-Retaliatory Reason*

Having determining Dr. Bennett established a prima facie case for retaliation, the burden shifts to TCCD to prove it had a legitimate, non-retaliatory reason to reject Dr. Bennett's offer to rescind her resignation. *See Outley*, 840 F.3d at 216, 219. The employer's burden here is simply a "burden . . . of production, not persuasion."   *Musser v. Paul Quin. Coll.*, 944 F.3d 557, 561 (5th Cir. 2019) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)).

TCCD attempts to satisfy its burden of production by arguing that it had a "consistent practice" of not accepting requests to rescind resignations and offers two pieces of evidence to support the existence of this practice. First, it offers emails from Dr. Jack Reynold's resignation and subsequent attempt to rescind his resignation, which TCCD immediately denied. Doc. 65, Def.'s App., 2, ¶ 6, 78–80. Second, TCCD also offers Gloria Powell's declaration stating that while TCCD does not "ha[ve] a policy allowing employees to rescind their resignations," TCCD did not allow Dr. Reynolds or Dr. Bennett to rescind their resignations, which are the only two instances in the last

five years that Powell knows of where an employee tried to rescind their resignation. *Id.* at 2, ¶¶ 2, 5–7.

TCCD cites *Edwin v. Clean Harbors* for the proposition that an employer's consistent practice can be a legitimate, non-retaliatory reason for an adverse employment action. Doc. 76, Def.'s Reply at 3; *see Edwin v. Clean Harbors Environmental Services Inc.*, No. 2:18-0385, 2022 WL 990530 at *3 (W.D. La. March 31, 2022). However, *Edwin* is distinguishable. First, the employer in *Edwin* had a company policy prohibiting employees from all illicit drug use and possession. *Edwin*, 2022 WL 990530 at *3. Here, TCCD has no policy governing employees rescinding resignations. Doc. 65, Def.'s App., 2, ¶ 5. Second, the "practice" in *Edwin* that TCCD cites was an employer terminating employees in "safety-sensitive positions" who violated its drug policy. *Edwin*, 2022 WL 990530 at *3. In other words, the employer's "practice" was simply effectuating its written policy. *See id.* TCCD cites no other case, nor is the Court aware of any case, where a court found that a "consistent practice," as opposed to a formal policy, was sufficient to establish a legitimate, not-retaliatory reason for an adverse employment action.

Ultimately, even if a company's consistent practice was a sufficient legitimate, non-retaliatory reason for an adverse employment action, the Court would still deny the motion for summary judgment because Bennett has established a genuine issue of material fact regarding whether this "consistent practice" was the real reason TCCD denied her request to rescind.

C.   *Pretext*

Assuming TCCD has satisfied its burden to provide a legitimate, non-retaliatory reason, the burden shifts back to Dr. Bennett to produce evidence showing that the offered reason is pretextual. *Porter*, 810 F.3d at 948 (citing *Coleman v. Jason Pharm.*, 540 Fed. App'x. 302, 304 (5th Cir. 2013)

(unpublished). While Dr. Bennett did not present her arguments using the *McDonnell Douglas* framework regarding pretext, she has nonetheless provided sufficient evidence to create a genuine issue of material fact regarding the veracity of TCCD's proffered reason denying her request.

To establish that an offered reason is pretextual, the plaintiff must show "that the adverse [employment] action would not have occurred but for the employer's retaliatory motive." *Garcia v. Prof. Contract Servs., Inc.*, 938 F.3d 236, 244 (5th Cir. 2019) (quotation omitted). "A plaintiff may show pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Jackson v. Cal–W. Packaging Corp.*, 602 F.3d 374, 378–79 (5th Cir. 2010) (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." *Laxton*, 333 F.3d at 578.

The factfinder can infer retaliation from the falsity of the employer's legitimate, non-retaliatory explanation. *See Reeves*, 530 U.S. at 147 ("In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose"). Similarly, plaintiffs can establish pretext by introducing any evidence that proves the falsity or "casts doubt" on the truthfulness of the employer's proffered reason. *Gee v. Principi*, 289 F.3d 342, 348 (5th Cir. 2002) (finding that summary judgment was not proper because plaintiff introduced sufficient evidence to "cast doubt" on the employer's proffered legitimate explanation).

To survive a motion for summary judgment, plaintiffs must show "a 'conflict in substantial evidence'" as to whether their employer would have taken the adverse employment action but-for the protected activity. *Musser*, 944 F.3d at 561(quoting *Hernandez v. Yellow Transp., Inc.*, 670 F.3d

644, 658 (5th Cir. 2012)). "Evidence is substantial if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Id.* at 561–62 (internal quotation marks and citation omitted).

In *Laxton*, the Fifth Circuit held that the plaintiff established a genuine issue of material fact regarding whether the legitimate, non-discriminatory reasons produced by the defendant were worthy of credence. *Laxton*, 333 F.3d at 583. The defendant argued that it fired the plaintiff because she repeatedly violated store policies and many other employees filed complaints against her. *Id.* at 579. The plaintiff survived the motion for summary judgment by introducing evidence showing the employer's non-retaliatory reasons lacked credence. *Id.* at 580. First, the plaintiff introduced evidence showing that some of the claimed violations of store policy never happened—for example, the defendant accused the plaintiff of hiring a bank robber to work at the store, but the plaintiff produced evidence showing she never actually hired the bank robber. *Id.* at 580. Second, she raised questions regarding the credibility and veracity of the complaints offered by the defendant because it failed to keep written records of these complaints, despite having a store policy requiring such written records. *Id.* The Court ultimately held "the jury could have reasonably concluded that [the defendant's] proffered reason for discharg[ing the plaintiff] was not its real reason." *Id.* at 583.

TCCD argues that not accepting resignation rescissions is a "consistent company practice," yet it has only produced evidence of this happening one other time. Doc. 65, Def.'s App., 2, ¶ 5, 78–80. While TCCD attempts to prove this consistent practice exists by showing that it previously denied Dr. Reynolds's rescission request, that incident is strikingly different from Dr. Bennett's case. Dr. Reynolds attempted to rescind his resignation the same day he initially resigned. *Id.* at 78–79. His supervisory dean told him the very next day "that [TCCD] cannot withdraw [your] resignation."

*Id.* at 80. Notably, the supervisory dean did not reference any official TCCD policy or practice that prevented it from accepting Dr. Reynolds's request to rescind. *See id.*

In contrast, Dr. Bennett was not notified that TCCD would not accept her request to rescind her resignation immediately. Instead, the Chief of Human Resources told Dr. Bennett that her request to rescind the resignation would be included in TCCD's investigation. Doc. 71, Pl.'s App., 13. This statement suggests that TCCD had not made a final decision regarding whether it would reinstate Dr. Bennett roughly a month after she attempted to rescind her resignation. The fact that TCCD did not immediately and unequivocally reject Dr. Bennett's attempt to rescind her resignation, like TCCD did with Dr. Reynolds, casts doubt on the veracity of this "consistent practice." *See Gee*, 289 F.3d at 348.

However, plaintiffs do not always establish pretext simply by showing that the legitimate reason is false. *See Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 826 (5th Cir. 2022). Employers are generally allowed to be unreasonable when they terminate employees. *Id.* (citation omitted). Rather than merely disproving the proffered reason, plaintiffs need to introduce evidence of "sufficient nature, extent, and quality" for a reasonable juror to be able to "infer discrimination." *Id.* (citation and internal quotations omitted). In *Owens*, the plaintiff introduced enough evidence to support a finding that the employer's legitimate reasons for the adverse employment action were false. *Id.* However, the Fifth Circuit still determined this evidence was insufficient to establish pretext because it would not cause a reasonable juror to infer discrimination. *Id.*

Here, Dr. Bennett was first encouraged to rescind her resignation by the chair of the TCCD Foundation Board. *Id.* at 4, ¶ 6. Later, several other TCCD Foundation Board members said they would help Dr. Bennett *after* she filed her grievance and attempted to rescind her resignation but

-18-

*before* she filed her complaint with the EEOC. *Id.* at 4, ¶¶ 7, 9. The fact that several people affiliated with TCCD said they would help Dr. Bennett casts doubt on the legitimacy of TCCD's asserted reason of not accepting resignation rescissions. While disputing the truth of the defendant's legitimate reason does not always establish pretext, introducing evidence that calls into question the existence of such a practice is of "sufficient nature, extent, and quality" for a reasonable juror to "infer discrimination." *See Owens*, 33 F.4th at 826. If TCCD did not actually have the asserted consistent practice of not accepting requests to rescind resignations, this proffered legitimate reason would be pretextual.

Lastly, while temporal proximity cannot be the sole reason for showing a genuine issue of material fact regarding pretext, the Fifth Circuit has recognized that temporal proximity is relevant to whether the legitimate reason was pretextual. *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 579 (5th Cir. 2020), as revised (Aug. 14, 2020) (citing *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007)). Here, Dr. Bennett asserts that several members of the TCCD Foundation Board said they supported her, and that TCCD's Chief of Human Resources told Dr. Bennett she had done nothing wrong after she requested to rescind her resignation but before she engaged in protected legal activity. Doc. 71, Pl.'s App., 13. Then, one month after Dr. Bennett filed her complaint with the EEOC, TCCD declined to accept her request to rescind the resignation.[2] *Id.* at 6. Such a close temporal proximity between the adverse employment action and the protected activity, as well as TCCD employees and board members only giving Dr. Bennett this support *before* she engaged in protected activity, further suggests that the legitimate reason proffered by TCCD is pretextual.

---

[2] There is a genuine issue of material fact regarding when exactly the request was denied.

In sum, the significant differences between the facts surrounding the Dr. Reynolds and Dr. Bennett resignations, the encouragement Dr. Bennett received to rescind her resignation, several other TCCD Foundation Board members also giving their support to Dr. Bennett, and the temporal proximity between the protected activity and the adverse employment action create a "conflict in substantial evidence" regarding whether TCCD's claimed consistent practice is the reason TCCD did not accept her request. *See Musser*, 944 F.3d at 561 (quotation omitted). This evidence undermines TCCD's asserted "consistent practice" of denying requests to rescind resignations and raises a genuine issue of material fact as to the real reason TCCD denied Dr. Bennett's request to rescind her resignation. The Court therefore **DENIES** TCCD's Motion for Summary Judgment (Doc. 63).

## V.

## CONCLUSION

Because Dr. Bennett established a genuine issue of material fact for retaliation under Title VII, the Court **DENIES** TCCD's Motion for Summary Judgment (Doc. 63). The Court also **OVERRULES** the first objection Dr. Bennett raised in the brief supporting her response and need not decide her second objection (Doc. 70).

**SO ORDERED**.

**SIGNED: October 10, 2023.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE